**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | § | Chapter 11 |
|  | § |  |
| **MOBILEUM, INC.,** *et al.*, | § | Case No.  24-90414 (CML) |
|  | § |  |
|  | § | **(Joint Administration Requested)** |
| Debtors.[1] | § |  |
|  | § |  |

**JOINT CHAPTER 11 PLAN OF
MOBILEUM, INC. AND ITS AFFILIATED DEBTORS**

**WEIL, GOTSHAL & MANGES LLP**
Gabriel A. Morgan (24125891)
Clifford W. Carlson (24090024)
700 Louisiana Street, Suite 3700
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile:  (713) 224-9511

**WEIL, GOTSHAL & MANGES LLP**
Jeffrey D. Saferstein (*pro hac vice* pending)
Alexander W. Welch (*pro hac vice* pending)
Daphne Papadatos (*pro hac vice* pending)
Eric L. Einhorn (*pro hac vice* pending)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Proposed Counsel for the Debtors
and Debtors in Possession*

Dated:   July 23, 2024
         Houston, Texas

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Mobileum, Inc. (7417); Matrix Intermediate, Inc. (7287); Matrix Holdco, LLC (0039); Matrix Parent, Inc. (9085); Mobile Acquisition Corp. (9591); SIGOS LLC (1763); UnwiredSoft, Inc. (2064); We Do Technologies Americas, Inc. (9338); Convene Networks LLC (2820); Developing Solutions Inc. (6177); and Phase 3 Innovations Holdings, Inc. (1899).  The Debtors' mailing address is 20813 Stevens Creek Boulevard, Suite 200, Cupertino, CA 95014.

Table of Contents

Page

**ARTICLE I.** DEFINITIONS AND INTERPRETATION. ................................................................... 1
   A. **Definitions.** ......................................................................................................... 1
   B. **Interpretation; Application of Definitions and Rules of Construction.** ....................... 15
   C. **Computation of Time.** ......................................................................................... 16
   D. **Reference to Monetary Figures.** ............................................................................ 16
   E. **Reference to the Debtors or the Reorganized Debtors** ............................................. 16
   F. **Controlling Document.** ......................................................................................... 16
   G. **Consultation, Information, Notice, and Consent Rights.** ........................................... 17

**ARTICLE II.** ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS,
   DIP CLAIMS, AND PRIORITY TAX CLAIMS ................................................... 17
   2.1. *Administrative Expense Claims.* ........................................................................... 17
   2.2. *Professional Fee Claims.* ..................................................................................... 17
   2.3. *Priority Tax Claims.* ............................................................................................ 18
   2.4. *DIP Claims.* ....................................................................................................... 18
   2.5. *Restructuring Fees and Expenses.* ........................................................................ 18
   2.6. *Professional Fee Escrow.* ..................................................................................... 19
   2.7. *Professional Fee Claims Estimate.* ........................................................................ 19
   2.8. *Post-Effective Date Fees and Expenses* .................................................................. 19

**ARTICLE III.** CLASSIFICATION OF CLAIMS AND INTERESTS. ...................................... 20
   3.1. *Classification in General.* .................................................................................... 20
   3.2. *Formation of Debtor Groups for Convenience Only.* ............................................... 20
   3.3. *Summary of Classification.* ................................................................................... 20
   3.4. *Special Provision Governing Unimpaired Claims.* .................................................. 20
   3.5. *Elimination of Vacant Classes.* ............................................................................ 21
   3.6. *No Waiver.* ........................................................................................................ 21
   3.7. *Voting Classes; Presumed Acceptance by Non-Voting Classes* ................................ 21

**ARTICLE IV.** TREATMENT OF CLAIMS AND INTERESTS. .......................................... 21
   4.1. *Other Secured Claims (Class 1)* ........................................................................... 21
   4.2. *Priority Non-Tax Claims (Class 2)* ....................................................................... 22
   4.3. *First Lien Claims (Class 3)* ................................................................................. 22
   4.4. *Second Lien Debt Claims (Class 4)* ....................................................................... 22
   4.5. *General Unsecured Claims (Class 5)* ..................................................................... 23
   4.6. *Intercompany Claims (Class 6)* ............................................................................ 23
   4.7. *Intercompany Interests (Class 7)* .......................................................................... 23
   4.8. *Existing Parent Equity Interests (Class 8)* ............................................................. 24

**ARTICLE V.** MEANS FOR IMPLEMENTATION. ............................................................. 24
   5.1. *Compromise and Settlement of Claims, Interests, and Controversies.* ......................... 24
   5.2. *Intercreditor Agreements* ..................................................................................... 24
   5.3. *Continued Corporate Existence; Effectuating Documents; Corporate Action;*
      *Restructuring Transactions.* .................................................................................. 25
   5.4. *Intercompany Interests; Corporate Reorganization.* ................................................ 26
   5.5. *Exit Credit Agreement.* ........................................................................................ 26
   5.6. *Section 1145 Exemption.* ..................................................................................... 27
   5.7. *Cancellation of Existing Securities and Agreements.* ............................................... 27
   5.8. *Cancellation of Liens.* ......................................................................................... 28
   5.9. *Officers and Boards of Directors* .......................................................................... 28

WEIL:\99859063\1\63808.0003

Table of Contents
(continued)

| | | |
|---|---|---:|
| 5.10. | *Management Incentive Plan* | 29 |
| 5.11. | *Authorization, Issuance, and Delivery of New Equity Interests.* | 29 |
| 5.12. | *Nonconsensual Confirmation* | 30 |
| 5.13. | *Closing of the Chapter 11 Cases* | 30 |
| 5.14. | *Notice of Effective Date.* | 30 |
| 5.15. | *Separate Plans.* | 30 |
| 5.16. | *Litigation Trust.* | 30 |
| **ARTICLE VI.** | DISTRIBUTIONS. | 30 |
| 6.1. | *Distributions Generally.* | 30 |
| 6.2. | *Distributions Subject to Intercreditor Agreements.* | 30 |
| 6.3. | *Distribution Record Date.* | 30 |
| 6.4. | *Date of Distributions.* | 31 |
| 6.5. | *Disbursing Agent.* | 31 |
| 6.6. | *Rights and Powers of Disbursing Agent.* | 31 |
| 6.7. | *Expenses of Disbursing Agent.* | 32 |
| 6.8. | *No Postpetition Interest on Claims* | 32 |
| 6.9. | *Delivery of Distributions.* | 32 |
| 6.10. | *Distributions as of Effective Date.* | 32 |
| 6.11. | *Unclaimed Property.* | 33 |
| 6.12. | *Time Bar to Cash Payments.* | 33 |
| 6.13. | *Manner of Payment under Plan.* | 33 |
| 6.14. | *Satisfaction of Claims.* | 33 |
| 6.15. | *Fractional Stock.* | 33 |
| 6.16. | *Minimum Cash Distributions.* | 34 |
| 6.17. | *Setoffs.* | 34 |
| 6.18. | *Allocation of Distributions between Principal and Interest.* | 34 |
| 6.19. | *No Distribution in Excess of Amount of Allowed Claim.* | 34 |
| 6.20. | *Withholding and Reporting Requirements.* | 34 |
| **ARTICLE VII.** | PROCEDURES FOR DISPUTED CLAIMS. | 35 |
| 7.1. | *Disputed Claims Generally.* | 35 |
| 7.2. | *Objections to Claims.* | 35 |
| 7.3. | *Estimation of Claims.* | 36 |
| 7.4. | *Disallowance of Claims.* | 36 |
| 7.5. | *No Distributions Pending Allowance.* | 36 |
| 7.6. | *Distributions after Allowance.* | 36 |
| 7.7. | *Claim Resolution Procedures Cumulative.* | 36 |
| 7.8. | *Single Satisfaction of Claims and Interests.* | 37 |
| **ARTICLE VIII.** | EXECUTORY CONTRACTS AND UNEXPIRED LEASES. | 37 |
| 8.1. | *General Treatment.* | 37 |
| 8.2. | *Determination of Cure Disputes and Deemed Consent.* | 38 |
| 8.3. | *Payments Related to Assumption or Assignment of Contracts and Leases.* | 38 |
| 8.4. | *Rejection Claims.* | 39 |
| 8.5. | *Survival of the Debtors' Indemnification Obligations.* | 39 |
| 8.6. | *Employee Arrangements.* | 39 |
| 8.7. | *Insurance Policies.* | 40 |

Table of Contents
(continued)

Page

8.8.    *Intellectual Property Licenses and Agreements*..................................................41
8.9.    *Assignment.*............................................................................................................41
8.10.   *Modifications, Amendments, Supplements, Restatements, or Other*
        *Agreements*............................................................................................................42
8.11.   *Reservation of Rights.*..........................................................................................42

**ARTICLE IX.** CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND
        EFFECTIVE DATE.......................................................................................42
9.1.    *Conditions Precedent to the Effective Date.* ......................................................42
9.2.    *Timing of Conditions Precedent.* ........................................................................44
9.3.    *Waiver of Conditions Precedent.* ........................................................................44
9.4.    *Effect of Non-Occurrence of the Effective Date.*................................................44

**ARTICLE X.** EFFECT OF CONFIRMATION OF PLAN. ................................................44
10.1.   *Vesting of Assets in the Reorganized Debtors*.....................................................44
10.2.   *Binding Effect.*.....................................................................................................45
10.3.   *Discharge of Claims and Termination of Interests.* ...........................................45
10.4.   *Term of Injunctions or Stays.*.............................................................................45
10.5.   *Injunction.*............................................................................................................45
10.6.   *Releases.*...............................................................................................................47
10.7.   *Exculpation.*.........................................................................................................49
10.8.   *Retention of Causes of Action/Reservation of Rights*.........................................50
10.9.   *Ipso Facto and Similar Provisions Ineffective.*..................................................50
10.10.  *Solicitation of Plan.*.............................................................................................50
10.11.  *Corporate and Limited Liability Company Action*.............................................50

**ARTICLE XI.** RETENTION OF JURISDICTION. ........................................................51
11.1.   *Retention of Jurisdiction.*....................................................................................51
11.2.   *Courts of Competent Jurisdiction*.......................................................................52

**ARTICLE XII.** MISCELLANEOUS PROVISIONS.........................................................53
12.1.   *Payment of Statutory Fees.*..................................................................................53
12.2.   *Substantial Consummation of the Plan.* .............................................................53
12.3.   *Request for Expedited Determination of Taxes.* .................................................53
12.4.   *Exemption from Certain Transfer Taxes.* ...........................................................53
12.5.   *Amendments.*........................................................................................................54
12.6.   *Effectuating Documents and Further Transactions.* ..........................................54
12.7.   *Revocation or Withdrawal of the Plan.* ..............................................................54
12.8.   *Severability of Plan Provisions.*..........................................................................54
12.9.   *Governing Law.*....................................................................................................55
12.10.  *Time.*.....................................................................................................................55
12.11.  *Dates of Actions to Implement the Plan.*............................................................55
12.12.  *Immediate Binding Effect.*...................................................................................55
12.13.  *Deemed Acts.*.......................................................................................................55
12.14.  *Successor and Assigns.*........................................................................................56
12.15.  *Entire Agreement.*................................................................................................56
12.16.  *Exhibits to Plan.*..................................................................................................56
12.17.  *Notices.*................................................................................................................56

WEIL:\99859063\1\63808.0003

Each of Mobileum, Inc.; Matrix Intermediate, Inc.; Matrix Holdco, LLC; Matrix Parent, Inc.; Mobile Acquisition Corp.; SIGOS LLC; UnwiredSoft, Inc.; We Do Technologies Americas, Inc.; Convene Networks LLC; Developing Solutions Inc.; and Phase 3 Innovations Holdings, Inc. (each, a "**Debtor**" and, collectively, the "**Debtors**") propose the following joint chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Capitalized terms used herein shall have the meanings set forth in Article I.A. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan, the settlements and transactions contemplated thereby, and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.      DEFINITIONS AND INTERPRETATION**.

A.      **Definitions.**

The following terms shall have the respective meanings specified below:

*1.1*          "***1145 Securities***" has the mean set forth in Section 5.6(a).

*1.2*          "***1L/2L Intercreditor Agreement***" means that certain Intercreditor Agreement, dated as of March 1, 2022 (as supplemented by that certain Intercreditor Agreement Joinder, dated as of March 15, 2023, by the First Lien Notes Agent and as further amended, restated, amended and restated, supplemented or otherwise modified from time to time) by and among each of the Debtors, the Administrative Agents, and each other person party thereto from time to time.

*1.3*          "***Acquisition Agreement***" means a purchase and sale agreement governing a transaction pursuant to the Purchase Transaction.

*1.4*          "***AcquisitionCo***" means, in the event the Purchase Transaction occurs, a subsidiary, taxed as a corporation for U.S. federal income tax purposes and wholly-owned indirectly by Reorganized Parent, that shall acquire (directly or indirectly) all or substantially all of the Debtors' assets and/or membership interests in accordance with the Acquisition Agreement and the Purchase Transaction Documents.

*1.5*          "***Administrative Agents***" means, collectively, the First Lien Term Loan Agent, the Second Lien Agent, and the First Lien Notes Agent.

*1.6*          "***Administrative Expense Claim***" means any Claim for a cost or expense of administration incurred during the Chapter 11 Cases pursuant to section 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for good and other services and leased premises) and (b) Professional Fee Claims.

*1.7*          "***Affiliate***" shall, with respect to an Entity, have the meaning set forth in section 101(2) of the Bankruptcy Code as if such Entity were a debtor in a case under the Bankruptcy Code.

1.8        "*Allowed*" means, with reference to any Claim or Interest, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed prior to the Effective Date, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or Reorganized Debtors, (c) any Claim or Interest as to which the liability of the Debtors or Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim or Interest expressly allowed hereunder; *provided*, *however*, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

1.9        "*Asset*" means all rights, title, and interests of the Debtors in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible, and intangible property.

1.10        "*Avoidance Action*" means any and all actual or potential Claims and Causes of Action to avoid or recover a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 502(d), 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code and applicable non-bankruptcy law.

1.11        "*Backstop Commitments*" means the commitment by the DIP Backstop Parties to backstop the DIP Facility in accordance with the terms set forth in the DIP Term Sheet (as defined in the Restructuring Support Agreement) and Backstop Commitment Letter.

1.12        "*Backstop Commitment Letter*" the Backstop Commitment Letter attached to the Restructuring Term Sheet as Exhibit 3.

1.13        "*Backstop Premium*" means the backstop premium to be paid as consideration to the DIP Backstop Parties on the DIP Closing Date, pursuant to the terms and conditions as set forth in the DIP Term Sheet and Backstop Commitment Letter, for providing the Backstop Commitments.

1.14        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*, as amended from time to time, as applicable to the Chapter 11 Cases.

1.15        "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas Houston Division having jurisdiction over the Chapter 11 Cases.

1.16        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code and any Local Bankruptcy Rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Cases.

1.17        "*Business Day*" means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.18        "*Cash*" means legal tender of the United States of America.

1.19        "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, dispute, proceeding, demand, right, lien, indemnity, contribution, guaranty, suit, obligation,

WEIL:\99859063\1\63808.0003

liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), choate, inchoate, reduced to judgment or otherwise whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law (including, without limitation, under any state or federal securities laws).  Causes of Action also includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim; and any Avoidance Actions.

1.20    "***Chapter 11 Cases***" means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court in which this Plan was filed.

1.21    "***Chancery Court Litigation***" means the proceedings pending in the Delaware Court of Chancery styled as *AG Mobile Holdings, L.P. v. H.I.G. Mobile, L.P.*, Case No. 2023-1103-MTZ (Del. Ch.) and any appeals therefrom.

1.22    "***Claim***" has the meaning set forth in section 101(5) of the Bankruptcy Code, as against any Debtor.

1.23    "***Class***" means any group of Claims or Interests classified as set forth in Article III of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.24    "***Collateral***" means any Asset of an Estate that is subject to a Lien securing the payment or performance of a Claim, which Lien is not invalid and has not been avoided under the Bankruptcy Code or applicable nonbankruptcy law, and any Security as such term is defined in section 101(49) of the Bankruptcy Code.

1.25    "***Confirmation Date***" means the date on which the Bankruptcy Court enters the Confirmation Order.

1.26    "***Confirmation Hearing***" means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.27    "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.28    "***Consenting Creditor Advisors***" means the Consenting First Lien Creditor Advisors and Consenting Second Lien Creditor Advisors.

1.29    "***Consenting Creditor Group Counsels***" means the Consenting First Lien Creditor Group Counsel and the Consenting Second Lien Creditor Group Counsel.

1.30    "***Consenting Creditors***" means the Consenting First Lien Lenders and the Consenting Second Lien Lenders and any subsequent creditor that becomes party to the Restructuring Support Agreement pursuant to the terms thereof.

1.31    "***Consenting First Lien Creditor Advisors***" means, collectively: (i) the Consenting First Lien Lender Group Counsel, (ii) Houlihan Lokey, Inc. as financial advisor to the First Lien Ad Hoc Group, and

(iii) one local legal counsel per other foreign jurisdiction as the Requisite Consenting First Lien Lenders determine reasonably necessary.

1.32       "**Consenting Creditor Consent Rights**" means any applicable consent, approval, and/or consultation right of the Consenting Creditors as set forth in the Restructuring Support Agreement.

1.33       "**Consenting First Lien Creditor Group Counsel**" means Milbank LLP and Porter Hedges LLP, as legal advisors to the Consenting Creditors.

1.34       "**Consenting First Lien Lenders**" means the holders of First Lien Claims that are party to the Restructuring Support Agreement, together with their respective successors and permitted assigns.

1.35       "**Consenting Parties**" means, collectively, the Consenting Creditors and the Consenting Sponsor.

1.36       "**Consenting Second Lien Creditor Advisors**" means, collectively: (i) the Consenting Second Lien Lender Group Counsel and (ii) Greenhill & Co., as financial advisor to the Second Lien Ad Hoc Group.

1.37       "**Consenting Second Lien Creditor Group Counsel**" means Akin Gump Strauss Hauer & Feld LLP, as legal advisor to the Second Lien Ad Hoc Group.

1.38       "**Consenting Second Lien Lenders**" means the holders of Second Lien Debt Claims that are party to the Restructuring Support Agreement, together with their respective successors and permitted assigns.

1.39       "**Consenting Sponsor**" means, collectively, Matrix TopCo, L.P., H.I.G. Technology Partners A, L.P., H.I.G. Europe Middle Market LBO Fund III, L.P., H.I.G. Middle Market LBO Fund III, L.P., H.I.G. Matrix Co-Investors L.P., and H.I.G. Mobile, L.P.

1.40       "**Consenting Sponsor Counsel**" means Simpson Thacher & Bartlett LLP and one local counsel as reasonably necessary as determined by the Consenting Sponsor.

1.41       "**Cure Amount**" means as applicable, (i) the payment of Cash by the Debtors, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to (a) cure a monetary default by the Debtors in accordance with the terms of an Executory Contract or Unexpired Lease and (b) permit the Debtors to assume such Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code or (ii) the payment of Cash by the Debtors in an amount required by section 1124(2) of the Bankruptcy Code to Reinstate a Claim.

1.42       "**Cure Dispute**" means an unresolved objection regarding assumption of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code, including objections based on the appropriate Cure Amount or "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or any other issue relating to an assumption of an Executory Contract or Unexpired Lease.

1.43       "**D&O Policy**" means, collectively, all insurance policies (including any "tail policy") issued or providing coverage to any of the Debtors for current or former directors', managers', and officers' liability, and all agreements, documents, or instruments related thereto.

1.44       "**Debtor or Debtors**" has the meaning set forth in the introductory paragraph of the Plan.

1.45        "***Debtors in Possession***" means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.46        "***Definitive Documents***" means, collectively: (i) the Plan and the Plan Supplement, including, without limitation, any schedules of assumed or rejected contracts, (ii) the Disclosure Statement and the Solicitation Materials and exhibits related thereto, (iii) the Disclosure Statement Approval Order, (iv) the Confirmation Order, (v) the DIP Documents, including the DIP Orders; (vi) the Exit Credit Agreement and related credit documents, (vii) the New Corporate Governance Documents; (viii) the Management Incentive Plan, if any, (ix) the Litigation Trust Agreement, (x) the Backstop Commitment Letter, and (xi) any other material, documents, instruments, schedules, or exhibits described in, related to, or contemplated in, or necessary to implement, each of the foregoing.

1.47        "***DIP Agent***" means Acquiom Agency Services LLC and Seaport Loan Products LLC,, in their capacities as co-administrative agents, and Acquiom Agency Services LLC, in its capacity as collateral agent under the DIP Credit Agreement, their successors, permitted assigns, or any replacement agent appointed pursuant to the terms of the DIP Credit Agreement.

1.48        "***DIP Backstop Parties''*** means certain First Lien Lenders set forth in Schedule 1 to the Restructuring Support Agreement that have provided the Backstop Commitments.

1.49        "***DIP Claims***" means all Claims held by the DIP Lenders or the DIP Agent on account of, arising under, or relating to the DIP Credit Agreement, the Backstop Commitment Letter, the DIP Facility, or the DIP Orders, including Claims for all principal amounts outstanding, and any and all fees, premiums, interest, expenses, indemnification obligations, reimbursement obligations, and other amounts due under the DIP Documents, which, for the avoidance of doubt, shall include all "DIP Obligations" as such term is defined in the DIP Orders.

1.50        "***DIP Closing Date***" means the Closing Date as defined in the DIP Credit Agreement.

1.51        "***DIP Commitment***" means the commitment to provide the Debtors new money in Cash in the amounts contemplated under the DIP Orders.

1.52        "***DIP Credit Agreement***" means that certain *Debtor-In-Possession Credit Agreement* dated on or about July 23, 2024, by and among the Debtors, the DIP Agent and the DIP Lenders, as approved by the DIP Orders, as may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms.

1.53        "***DIP Documents***" means the DIP Motion, the DIP Orders, the DIP Credit Agreement, and any related credit documents.

1.54        "***DIP Facility***" or "***DIP Financing***" means a superpriority, senior-secured, priming debtor-in-possession credit facility consisting of (i)(x) $60,000,000 of new-money DIP Loans and (ii)(y) subject to the DIP Term Sheet and paragraph 2(c) of the DIP Orders, a roll-up of First Lien Claims in the aggregate principal amount of $100,000,000, and (ii) the Backstop Premium, which shall be paid in the form of Tranche B Loans (as defined in the DIP Term Sheet) on the DIP Closing Date.

1.55        "***DIP Lenders***" means the lenders from time to time party to the DIP Credit Agreement.

1.56        "***DIP Loans***" means the loans provided under the DIP Facility.

1.57     "**DIP Motion**" means the motion seeking approval by the Bankruptcy Court of the DIP Facility and entry of the DIP Orders, including any declarations and exhibits submitted in support thereof.

1.58     "**DIP Obligations**" has the meaning set forth in the DIP Orders.

1.59     "**DIP Orders**" means, collectively, the Interim DIP Order and the Final DIP Order.

1.60     "**DIP Term Sheet**" means the DIP Term Sheet attached as Exhibit 1 to the Restructuring Term Sheet.

1.61     "**Disallowed**" means, with respect to any Claim or Interest, that such Claim or Interest has been determined by a Final Order or specified in a provision of the Plan not to be Allowed.

1.62     "**Disbursing Agent**" means any Entity (including any applicable Debtor or Reorganized Debtor, as applicable, if it acts in such capacity) in its capacity as a disbursing agent under Article VI of the Plan.

1.63     "**Disclosure Statement**" means the disclosure statement in respect of the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.64     "**Disputed**" means with respect to a Claim, (a) any Claim, which is disputed under Section 7.1 of the Plan or as to which the Debtors have interposed and not withdrawn an objection or request for estimation that has not been determined by a Final Order; (b) any Claim, proof of which was required to be timely and proper but as to which no such Proof of Claim was filed; (c) any Claim that is listed in the Schedules, if any are filed, as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been filed; or (d) any Claim that is otherwise disputed by any of the Debtors or the Reorganized Debtors in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by a Final Order.  To the extent the Debtors dispute only the amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claim.

1.65     "**Distribution Record Date**" means the date that is fifteen (15) days prior to the anticipated Effective Date of the Plan, or such other time as agreed between the Debtor and the Requisite Consenting First Lien Lenders.

1.66     "**Effective Date**" means the date on which: (i) no stay of the Confirmation Order is in effect and (ii) all conditions precedent specified in Article IX have been satisfied or waived in accordance with the terms of the Plan.  Without limiting the foregoing, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

1.67     "**Employee Arrangements**" means all employment or employee related arrangements, agreements, programs, and policies, and all compensation and benefits plans, severance, policies, award letters, key employee retention agreements, and compensatory programs of the Debtors applicable to their respective employees, retirees, consultants, contractors, and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans (including equity and equity-based plans), welfare benefits plans, and life and accidental death and dismemberment insurance plans.

1.68     "**Entity**" means an individual, corporation, partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government unit (as defined in section 101(27) of the Bankruptcy Code) or any political subdivision thereof, or other person (as defined in section 101(41) of the Bankruptcy Code) or other entity.

1.69        "*Estate or Estates*" means individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

1.70        "*Exculpated Parties*" means each of the following in their capacity as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

1.71        "*Executory Contract*" means a contract to which one or more Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.72        "*Existing Parent Equity Interests*" means Interests in Intermediate as of the Petition Date.

1.73        "*Exit Administrative Agent*" means the agent to the Exit Credit Agreement in its capacities as administrative agent and collateral agent thereunder.

1.74        "*Exit Credit Agreement*" means that certain Credit Agreement to be entered into by the Reorganized Debtors, the Exit Administrative Agent and the Exit Facility Lenders in accordance with the Exit Facility Term Sheet (as defined in the Restructuring Support Agreement).

1.75        "*Exit Facility Documents*" means, collectively, the Exit Credit Agreement and all other loan documents, including all other agreements, documents, and instruments delivered or entered into pursuant thereto or in connection therewith (including any guarantee agreements and collateral documentation) (in each case, as amended, restated, amended and restated, modified, or supplemented from time to time).

1.76        "*Exit Facility Lenders*" means the lenders who are time to time party to the Exit Credit Agreement.

1.77        "*Exit Term Loan Facility*" the senior-secured, first lien term loan facility on the terms set forth in the Exit Credit Agreement.

1.78        "*Exit Term Loans*" means the loans to be provided under the Exit Term Loan Facility.

1.79        "*Final DIP Order*" means the order of the Bankruptcy Court approving the DIP Motion on a final basis.

1.80        "*Final Order*" means as applicable, an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, including any order subject to appeal but for which no stay of such order has been entered, and as to which the time to appeal, seek certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been withdrawn with prejudice, resolved by the highest court to which the order or judgment was appealed or from which certiorari could be sought, or any request for new trial, reargument, or rehearing has been denied, resulted in no stay pending appeal or modification of such order, or has otherwise been dismissed with prejudice; provided, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

1.81        "*First Lien Ad Hoc Group*" means the ad hoc group of First Lien Lenders represented by the Consenting First Lien Creditor Advisors.

1.82 "**_First Lien Administrative Agent_**" means, collectively, the First Lien Term Loan Agent and the First Lien Notes Agent.

1.83 "**_First Lien Claims_**" means the First Lien Debt Claims and the First Lien Notes Claims.

1.84 "**_First Lien Credit Agreement_**" means that certain _First Lien Credit Agreement_, dated as of March 1, 2022 (as amended, restated, amended and restated, supplemented, or modified from time to time prior to the date hereof, by and among, Holdings, Matrix Parent, the First Lien Lenders, and the First Lien Term Loan Agent.

1.85 "**_First Lien Debt Claims_**" means any Claim arising from or in connection with the First Lien Term Loans and First Lien Revolving Loans under the First Lien Credit Agreement, including any accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto, less the amount of any First Lien Term Loans and/or First Lien Revolving Loans converted into Rolled-Up DIP Loans.

1.86 "**_First Lien Lenders_**" means the lenders who are from time to time party to the First Lien Credit Agreement.

1.87 "**_First Lien Lender Group_**" means the ad hoc group of First Lien Lenders represented by the Consenting First Lien Lender Advisors.

1.88 "**_First Lien Notes Agent_**" means the notes agent for the Noteholders under the Note Purchase Agreement.

1.89 "**_First Lien Notes Claims_**" means any Claim arising from or in connection with the notes issued under the Note Purchase Agreement, including any accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto, less the amount of any indebtedness under the Note Purchase Agreement converted into Rolled-Up DIP Loans.

1.90 "**_First Lien Revolving Loans_**" means revolving credit facility loans arising under the First Lien Credit Agreement in the aggregate principal amount of $53 million.

1.91 "**_First Lien Term Loan Agent_**" means the administrative and collateral agent under the First Lien Credit Agreement.

1.92 "**_First Lien Term Loans_**" means term loans arising under the First Lien Credit Agreement in the aggregate principal amount of approximately $381 million.

1.93 "**_General Unsecured Claims_**" means any Claim that is not an Other Secured Claim, Priority Tax Claim, Priority Non-Tax Claim, Administrative Expense Claim, DIP Claim, First Lien Claim, Second Lien Debt Claim, an Intercompany Claim, a Section 510(b) Claim, or a Claim that is secured, subordinated, or entitled to priority under the Bankruptcy Code, or other Claim paid in full prior to the Effective Date pursuant to a Final Order of the Bankruptcy Court.

1.94 "**_Governmental Unit_**" has the meaning set forth in section 101(27) of the Bankruptcy Code.

1.95 "**_H.I.G._**" means H.I.G. Capital, L.L.C., a Delaware limited liability company.

1.96 "**_Holdings_**" means Matrix Holdco, LLC, a Delaware limited liability company.

WEIL:\99859063\1\63808.0003

1.97        "***Impaired***" means, with respect to a Claim, Interest, or Class of Claims or Interests, "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.98        "***Indemnification Obligation*** has the meaning set forth in <u>Section 8.5</u>.

1.99        "***Intercompany Claim***" means any Claim against a Debtor held by another Debtor.

1.100        "***Intercompany Interest***" means an Interest in a Debtor other than Intermediate.

1.101        "***Intercreditor Agreements***" means, collectively, the Pari Passu Intercreditor Agreement and the 1L/2L Intercreditor Agreement.

1.102        "***Intermediate***" means Matrix Intermediate, Inc., a Delaware corporation.

1.103        "***Interests***" means any (i) equity in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all ordinary shares, units, common stock, preferred stock, membership interest, partnership interest, or other instruments evidencing an ownership interest, or equity security (as defined in section 101(16) of the Bankruptcy Code) in any of the Debtors, whether or not transferable, and any option, warrant or right, contractual or otherwise, including, without limitation, equity-based employee incentives, grants, stock options, stock appreciation rights, restricted stock, restricted stock units, performance shares/units, incentive awards, or other instruments issued to employees of the Debtors, to acquire any such interests in a Debtor that existed immediately before the Effective Date, and (ii) Section 510(b) Claim against a Debtor.

1.104        "***Interim DIP Order***" means the order of the Bankruptcy Court approving the DIP Motion on an interim basis.

1.105        "***Insured Claim***" means any Claim or portion of a Claim that is, or may be, insured under any insured policy.

1.106        "***Lien***" has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.107        "***Litigation Proceeds Term Sheet***" means that certain Litigation Proceeds Term Sheet agreed upon by and between the Debtors, the Consenting Creditors, and the Consenting Sponsor, including as Exhibit 5 to the Restructuring Term Sheet.

1.108        "***Litigation Trust***" means the trust established for the benefit of the Litigation Trust Beneficiaries on the Effective Date pursuant to the terms herein and the Litigation Trust Agreement, whereby the parties thereto shall contribute the Trust Causes of Action held for the benefit of the Litigation Trust Beneficiaries.

1.109        "***Litigation Trust Agreement***" means that certain Litigation Trust Agreement to be entered into by the Consenting Sponsor, the Reorganized Debtors, as applicable, and the Consenting Creditors which shall govern (i) the management of the Litigation Trust and the respective rights, powers, and obligations of the Litigation Trust Beneficiaries and (ii) be consistent with the Litigation Proceeds Term Sheet.

1.110        "***Litigation Trust Beneficiaries***" means the beneficiaries of the Litigation Trust.

1.111        "***Local Bankruptcy Rules***" means the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas.

1.112        "***Management Incentive Plan***" has the meaning set forth in <u>Section 5.10</u> of the Plan.

WEIL:\99859063\1\63808.0003

1.113     "*Management Services Agreements*" means, collectively: (i) that certain Professional Services Agreement, dated March 1, 2022, by and between Mobile Acquisition Corp. and H.I.G., and (ii) that certain Transaction Services Agreement, dated March 1, 2022, by and between the Mobile Acquisition Corp. and H.I.G..

1.114     "*Matrix Parent*" means Matrix Parent, Inc., a Delaware corporation.

1.115     "*Mobile Acquisition Corp.*" means Mobile Acquisition Corp., a Delaware corporation.

1.116     "*Mobileum*" means Mobileum Inc., a Delaware corporation.

1.117     "*New Board*" means the board of directors or managers of Reorganized Parent.

1.118     "*New Corporate Governance Documents*" means the certificate of incorporation, certificate of formation, bylaws, limited liability company agreements, shareholder agreement (if any), operating agreement, or other similar organizational or formation documents, as applicable, of any of the Reorganized Debtors..

1.119     "*New Equity Interests*" means the shares of common stock of Reorganized Parent to be issued, transferred, or distributed (a) on the Effective Date, (b) under the Management Incentive Plan, (c) as otherwise permitted pursuant to the Plan and the New Corporate Governance Documents.

1.120     "**Noteholders**" means the holders from time to time party to the Note Purchase Agreement.

1.121     "*Note Purchase Agreement*" means that *Note Purchase Agreement*, dated as of March 15, 2023 as amended, restated, amended and restated, supplement, or modified from time to time prior to the date hereof, by and among, Holdings, Matrix Parent, the Noteholders and the First Lien Notes Agent.

1.122     "*Other Secured Claim*" means a Secured Claim, other than an Administrative Expense Claim, a DIP Claim, a Priority Tax Claim, a First Lien Claim, or a Second Lien Debt Claim.

1.123     "*Pari Passu Intercreditor Agreement*" means that certain Pari Passu Intercreditor Agreement, dated as of March 15, 2023 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the date hereof) by and among each of the Debtors, First Lien Term Loan Agent, the First Lien Notes Agent, and each other person party thereto from time to time.

1.124     "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

1.125     "*Petition Date*" means, with respect to a Debtor, the date on which such Debtor commenced its Chapter 11 Case.

1.126     "*Plan*" means this joint chapter 11 plan, including all appendices, exhibits, schedules, and supplements hereto (including, without limitation, any appendices, schedules, and supplements to the Plan contained in the Plan Supplement), as the same may be amended, supplemented, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.127     "*Plan Documents*" means any of the documents, other than the Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including the documents to be included in the Plan Supplement.

WEIL:\99859063\1\63808.0003

1.128      "***Plan Supplement***" means a supplemental appendix to the Plan containing certain documents and forms of documents, schedules, and exhibits relevant to the implementation of the Plan, as may be amended, modified, or supplemented from time to time in accordance with the terms hereof and the Bankruptcy Code and Bankruptcy Rules, which shall include, but not be limited to: (a) the New Corporate Governance Documents; (b) the Exit Credit Agreement; (c) to the extent known, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (d) the Restructuring Transactions Exhibit; (e) the Schedule of Retained Causes of Action, (f) the Schedule of Rejected Contracts, if applicable, (g) the Litigation Trust Agreement; (h) the Schedule of Excluded Parties; *provided, that*, through the Effective Date, the Debtors shall have the right to amend the Plan Supplement and any schedules, exhibits, or amendments thereto, in accordance with the terms of the Plan and the Restructuring Support Agreement and subject to the consent rights thereunder.

1.129      "***Prerequisite Condition***" shall have the meaning ascribed to such term in Section 9.2 of the Plan.

1.130      "***Priority Non-Tax Claim***" means any Claim other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.131      "***Priority Tax Claim***" means any Secured Claim or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.132      "***Professional***" means an Entity (i) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code; or (ii) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code that are not Restructuring Fees and Expenses.

1.133      "***Professional Fee Claims***" means all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

1.134      "***Professional Fee Claims Estimate***" means the aggregate unpaid Professional Fee Claims as estimated in accordance with Section 2.7 of the Plan.

1.135      "***Professional Fee Escrow***" means an escrow account established and funded pursuant to Section 2.6 of the Plan.

1.136      "***Proof of Claim***" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

1.137      "***Pro Rata Share***" means the proportion that an Allowed Claim or Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interest in that Class, or the proportion that Allowed Claims or Interests in a particular Class bear to the aggregate amount of Allowed Claims and Disputed Claims or Allowed Interests and Disputed Interests in a particular Class and other Classes entitled to share in the same recovery as such Class under the Plan.

1.138      "***Purchase Transaction***" means the transactions so defined in the Restructuring Transactions Exhibit (including any amendments thereto), pursuant to which AcquisitionCo acquires substantially all of the assets of the Debtors in the event the Debtors elect to pursue the Purchase Transaction.

1.139　　　　"**_Purchase Transaction Documents_**" means (i) the Acquisition Agreement, and (ii) any other documents setting forth the definitive terms of the Purchase Transaction, in each case in form and substance reasonably acceptable to the Requisite Consenting First Lien Lenders and the Debtors.

1.140　　　　"**_Purchase Transaction Election Date_**" means the date that is seven (7) days prior to the date the Confirmation Hearing.

1.141　　　　"**_Reinstate, Reinstated, or Reinstatement_**" means leaving a Claim Unimpaired under the Plan.

1.142　　　　"**_Related Fund_**" means, with respect to any holder of Allowed Claims, any Affiliates (including at the institutional level) of such holder or any fund, account (including any separately managed accounts) or investment vehicle that is controlled, managed, advised or sub-advised by such holder, an Affiliate of such holder, or by the same investment manager, advisor or subadvisor as such holder.

1.143　　　　"**_Related Parties_**" means with respect to a Person, that Person's current and former Affiliates, and such Person's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, limited and general partners, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, partners, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investments advisors (including, with respect to the Consenting Sponsor, H.I.G.), representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such; _provided_, _however_, the Entities or individuals, as applicable, listed on the Schedule of Excluded Parties shall not constitute Related Parties nor Released Parties.

1.144　　　　"**_Released Parties_**" means, collectively: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Creditors; (iv) the Consenting Sponsor; (v) the DIP Agent; (vi) the DIP Lenders; (vii) the DIP Backstop Parties and (viii) with respect to each of the foregoing Persons in clauses (i) through (vii), all Related Parties; _provided_, _however_, the Entities or individuals, as applicable, listed on the Schedule of Excluded Parties shall not constitute Related Parties nor Released Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in Section 10.6(b) of the Plan shall not be deemed a Released Party thereunder.

1.145　　　　"**_Releasing Parties_**" means, collectively, and in each case solely in their capacity as such: (i) the Debtors; (ii) the Reorganized Debtors; (iii) the Consenting Creditors; (iv) the Consenting Sponsor; (v) the DIP Agent; (vi) the DIP Lenders; (vii) the DIP Backstop Parties; (viii) the Released Parties; (ix) with respect to each of the foregoing Persons in clauses (i) through (viii), all Related Parties; (x) the Holders of all Claims or Interests that vote to accept the Plan; (xi) the Holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but that do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein; (xii) the Holders of all Claims or Interests that vote, or are deemed, to reject the Plan or that are presumed to accept the Plan but do not opt out of granting the releases set forth herein; and (xiii) the Holders of all Claims and Interests and all Other Beneficial Owners that were given notice of the opportunity to opt out of granting the releases set forth herein but did not opt out.

1.146　　　　"**_Reorganized Debtors_**" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date (including, after the closing of the Purchase Transaction, if applicable, AcquisitionCo).

1.147     "***Reorganized Parent***" means from and after the Effective Date, the Entity identified as the Reorganized Parent in the Restructuring Transactions Exhibit, which could be (i) Intermediate as reorganized pursuant to the Plan, (ii) another Reorganized Debtor or (iii) the corporation (or limited liability company or other Entity taxed as a corporation for U.S. federal income tax purposes, as the case may be) that is the parent of the Entities holding, owning or acquiring all, or substantially all, of the assets of the Debtors pursuant to the Purchase Transaction.

1.148     "***Requisite Consenting First Lien Lenders***" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

1.149     "***Requisite Consenting Second Lien Lenders***" shall have the meaning ascribed to such term in the Restructuring Support Agreement.

1.150     "***Restructuring Fees and Expenses***" means all reasonable and documented fees, costs and expenses of (i) each of the Consenting Creditor Advisors, in each case, (A) in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation and/or enforcement of the Restructuring Support Agreement, this Plan, and/or any of the other Definitive Documents or Plan Documents, and/or the transactions contemplated hereby or thereby, and/or any amendments, waivers, consents, supplements or other modifications to any of the foregoing and, to the extent applicable, (B)(x) consistent with any engagement letters or fee reimbursement letters entered into between the Debtors, on the one hand, and the applicable Consenting Creditor Advisors, on the other hand (as supplemented and/or modified by this Agreement), or (y) as provided in the DIP Orders and/or the Confirmation Order; *provided*, *however*, the Restructuring Fees and Expenses of the Second Lien Lender Advisors shall be capped at $2.5 million for all fees and expenses incurred following the parties execution of the Restructuring Support Agreement, and (ii) the Consenting Sponsor Counsel, in an amount not to exceed $750,000, in connection with the negotiation, formulation, preparation, execution, delivery, implementation, consummation and/or enforcement of the Restructuring Support Agreement and/or any of the other Definitive Documents or Plan Documents, and/or the transactions contemplated thereby, and/or any amendments, waivers, consents, supplements or other modifications to any of the foregoing.

1.151     "***Restructuring Support Agreement***" means that certain Restructuring Support Agreement, dated as of July 23, 2024, by and among the Debtors and the Consenting Parties, including all exhibits, annexes, and schedules attached thereto (as may be amended, supplemented or modified from time to time and including in accordance with the terms thereof).

1.152     "***Restructuring Term Sheet***" means the Restructuring Term Sheet attached as <u>Exhibit A</u> to the Restructuring Support Agreement.

1.153     "***Restructuring Transactions***" means one or more transactions premised on a debt-for-equity exchange pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, in each case, with the reasonable consent of the Requisite Consenting First Lien Lenders, including: (i) the execution and delivery of any appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Persons may agree, including the documents comprising the Plan Supplement; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Persons agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, amalgamation, consolidation, conversion, or dissolution pursuant to applicable state law; (iv) with the reasonable consent of the Requisite Consenting First Lien Lenders, such other transactions that are required to effectuate the Restructuring

WEIL:\99859063\1\63808.0003

Transactions Exhibit in a tax efficient manner for the Debtors and Reorganized Debtors, including any mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions, or liquidations; (v) the execution, delivery, and filing, if applicable, of the Definitive Documents and Plan Documents; (vi) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order or rule; and (vii) all other actions that the applicable Persons determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

1.154    "*Restructuring Transactions Exhibit*" means the summary of transaction steps to complete the restructuring contemplated by the Plan included in the Plan Supplement.

1.155    "*Rolled-Up DIP Loans*" means subject to the DIP Term Sheet and paragraph 2(c) of the DIP Orders, the $100,000,000 of First Lien Claims rolled-up into the DIP Facility pursuant to the DIP Documents.

1.156    "*RWI Policy*" means the representations and warranties policy no. ET111-003-478 issued to Matrix Parent with a policy term of March 1, 2022 to March 1, 2025.

1.157    "*Schedule of Excluded Parties*" means the Schedule of Excluded Parties to be included in the Plan Supplement.

1.158    "*Schedule of Rejected Contracts*" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, if any, as the same may be amended, modified, or supplemented from time to time.

1.159    "*Schedule of Retained Causes of Action*" means a schedule of Causes of Action to be retained by the Reorganized Debtors as set forth in the Plan Supplement and which, for the avoidance of doubt, will include all Causes of Action, including the Causes of Action, underlying the Superior Court Litigation and Chancery Court Litigation, against the Parties listed in the Schedule of Excluded Parties.

1.160    "*Schedules*" means any schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

1.161    "*Second Lien Ad Hoc Group*" means the ad hoc group of Second Lien Lenders represented by the Consenting Second Lien Creditor Advisors.

1.162    "*Second Lien Agent*" means the administrative agent and collateral agent for the Second Lien Lenders pursuant to the Second Lien Credit Agreement.

1.163    "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of March 1, 2022, as amended, restated, amended and restated, supplemented, or modified from time to time prior to the date hereof, by and among, Holdings, Matrix Parent, the Second Lien Lenders and the Second Lien Agent.

1.164    "*Second Lien Debt Claims*" means any Claim arising from or in connection to the second lien term loans under the Second Lien Credit Agreement, including any accrued and unpaid interest, fees, and other amounts arising and payable with respect thereto.

1.165    "*Second Lien Lenders*" means the lenders from time to time party to the Second Lien Credit Agreement.

14

1.166        "*Section 510(b) Claims*" mean any Claim (i) arising from the rescission of a purchase or sale of an Interest of any Debtor or an affiliate of any Debtor (including the Existing Parent Equity Interests); (ii) for damages arising from the purchase or sale of such Interest; or (iii) for reimbursement or contribution Allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.167        "*Secured Claim*" means a Claim (a) secured by a Lien on Collateral to the extent of the value of such Collateral as (i) set forth in the Plan, (ii) agreed to by the holder of such Claim and the Debtors, or (iii) determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code exceeds the value of the Claim, or (b) secured by the amount of any right of setoff of the holder thereof in accordance with section 553 of the Bankruptcy Code; *provided*, *that*, nothing in this definition shall alter the terms of any subordination pursuant to the Intercreditor Agreements or section 510 of the Bankruptcy Code.

1.168        "*Securities Act*" has the meaning set forth in Section 5.6(a).

1.169         "*SIR*" means self-insured retention or similar deductible.

1.170        "*Solicitation Materials*" means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

1.171        "*Subsequent Condition*" shall have the meaning ascribed to such term in Section 9.2 herein.

1.172        "*Superior Court Litigation*" means the proceedings pending in the Delaware Superior Court styled as *Matrix Parent, Inc. v. Audax Management Co.*, Case No. N23C-10-212 MAA CCLD (Del. Super.) and any appeals therefrom.

1.173        "*Tax Code*" means the Internal Revenue Code of 1986, as amended from time to time.

1.174        "*Tranche B Loans*" has the meaning set forth in the DIP Term Sheet.

1.175        "*Trust Causes of Action*" means all right and interest that the parties to the Litigation Trust Agreement hold or may hold in connection with the alleged manipulation of revenue at the Debtors by certain Debtor personnel, including the Superior Court Litigation.

1.176        "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

1.177        "*Unimpaired*" means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code.

1.178        "*U.S. Trustee*" means the United States Trustee.

B.        **Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in the Plan," "of the Plan," "to the Plan," and "under the Plan," respectively.  The words "includes" and "including" are not limiting.  The headings in the Plan are for convenience of reference only and shall not

limit or otherwise affect the provisions hereof.  For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified herein, all references herein to "Sections" are references to Sections hereof or hereto; (4) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;  (5) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (6) any docket number references in the Plan shall refer to the docket number of any document filed with the Bankruptcy Court in the Chapter 11 Cases; (7) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (8) except as otherwise provided herein, any reference to a document or agreement that is to be issued or entered into that is dependent on an election to be made pursuant to the Plan or an event occurring shall be deemed to be followed by the words "if applicable"; (9) any immaterial effectuating provisions may be interpreted by the Debtors, or after the Effective Date, the Reorganized Debtors, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, subject to the reasonable consent of the Requisite Consenting First Lien Lenders; *provided*, that any effectuating provision that has an economic impact will not be considered "immaterial"; and (10) except as otherwise provided, any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.  To the extent that the treatment, allowance, or disallowance of any Claim herein is interpreted as a claim objection, the Plan shall be deemed a Claim objection to such Claim.

C.      **Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

D.      **Reference to Monetary Figures**.

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

E.      **Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

F.      **Controlling Document**.

In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or the Confirmation Order).  In the event of an inconsistency between the Plan and any other instrument or document created or executed pursuant to the Plan, or between the Plan and the Disclosure Statement, the Plan shall control.  The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided*,

*that*, if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan.

G. **Consultation, Information, Notice, and Consent Rights**.

Notwithstanding anything herein to the contrary, any and all consultation, information, notice, and consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement (without enhancement or expansion thereof), including any Consenting Creditor Consent Rights, with respect to the form and substance of the Plan, all exhibits to the Plan, the Plan Supplement, and all other Definitive Documents and Plan Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and fully enforceable as if stated in full herein. Any and all consent rights of the Requisite Consenting First Lien Lenders, the Requisite Consenting Second Lien Lenders, and the Consenting Sponsor referenced in the Plan or the Restructuring Support Agreement, to the extent given, not given, or otherwise withheld, may be communicated by email transmission by counsel to the consenting party.

**ARTICLE II.    ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS.**

2.1. ***Administrative Expense Claims***.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to different treatment, each holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim) shall receive, in full and final satisfaction of such Claim, (i) Cash in an amount equal to such Allowed Administrative Expense Claim on the Effective Date or as soon as practicable thereafter or (ii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code and as agreed to by the Debtors and the Requisite Consenting First Lien Lenders; *provided*, *however*, Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the Debtors or the Reorganized Debtors, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders, course of dealing or agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2. ***Professional Fee Claims***.

(a)    All Professionals seeking approval by the Bankruptcy Court of Professional Fee Claims shall (i) file, on or before the date that is forty-five (45) days after the Effective Date (unless extended by the Reorganized Debtors), their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and (ii) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claims.

(b)    The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

2.3.      ***Priority Tax Claims***.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, on the earlier of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date, (b) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, at the sole option of the Debtor or the Reorganized Debtors, as applicable, (i) Cash in an amount equal to such Allowed Priority Tax Claim or (ii) such other treatment reasonably acceptable to the Debtors or Reorganized Debtors (as applicable) consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code and as agreed to by the Requisite Consenting First Lien Lenders; *provided that*, with the consent of the Requisite Consenting First Lien Lenders, the Debtors and the Reorganized Debtors, as applicable, reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

2.4.      ***DIP Claims***.

Subject to the DIP Term Sheet and paragraph 2(c) of the DIP Orders, on the Effective Date, each holder of an Allowed DIP Claim shall receive, in full and final satisfaction of such Allowed DIP Claim:  (a)(i) in exchange for the principal amount of such Allowed DIP Claim, excluding any such principal amount on account of the Tranche B Loans, Exit Term Loans, (ii) New Equity Interests in exchange for the amount of such holder's Allowed DIP Claim on account of the such holder's principal amount of Tranche B Loans, subject to dilution by the Management Incentive Plan, and (iii) payment in full in cash of all accrued and unpaid interest and other obligations on account of the DIP Loans (excluding the obligations to pay the principal amount of the DIP Loans paid pursuant to clauses (i) and (ii) hereof), or (b) such other treatment as agreed to by the Debtors and such DIP Lender. On the Effective Date, the DIP Facility and all DIP Documents shall be deemed cancelled, all Liens granted to secure the Allowed DIP Claims shall be automatically terminated and of no further force and effect, and all collateral subject to such Liens shall be automatically released, in each case without further action by the DIP Agent or the DIP Lenders, and all guarantees of the Debtors and Reorganized Debtors arising out of or related to the DIP Claims shall be automatically discharged and released, in each case without further action by the DIP Agent or the DIP Lenders.  The DIP Agent and the DIP Lenders shall take all actions to effectuate and confirm such termination, release, and discharge as reasonably requested by the Debtors or the Reorganized Debtors, as applicable (and at the Debtors' or Reorganized Debtors' sole cost and expense), or the Debtors or the Reorganized Debtors shall be permitted to file any applicable releases or terminations.

2.5.      ***Restructuring Fees and Expenses***.

The Restructuring Fees and Expenses incurred, or estimated to be incurred, up to and including the Effective Date (or, with respect to necessary post-Effective Date activities, after the Effective Date), shall be paid in full in Cash on the Effective Date or as soon as reasonably practicable thereafter (to the extent not previously paid during the course of the Chapter 11 Cases) in accordance with, and subject to, the terms of the Restructuring Support Agreement, without any requirement to file a fee application with the Bankruptcy Court or without any requirement for Bankruptcy Court review or approval.  All Restructuring Fees and Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimates shall not be considered an admission or limitation with respect to such Restructuring Fees and Expenses.  On the Effective Date, or as soon as practicable thereafter, final invoices for all Restructuring Fees and Expenses incurred prior to and as of the Effective Date shall be submitted to the Debtors.

2.6. ***Professional Fee Escrow.***

(a)        As soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or interests shall encumber the Professional Fee Escrow in any way (whether on account of the DIP Loans, Exit Term Loans, or otherwise).  The Professional Fee Escrow (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors, their Estates, or the Reorganized Debtors, and (ii) shall be held in trust for the Professionals; *provided*, *that*, funds remaining in the Professional Fee Escrow after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Reorganized Debtors.  Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow when such Claims are Allowed by an order of the Bankruptcy Court; *provided*, *that*, the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow, but subject to any order of the Bankruptcy Court capping the amount of any such fees.

(b)        If the amount of funds in the Professional Fee Escrow is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow from the Debtors' Estates or Reorganized Debtors, as applicable, without any further action or order of the Bankruptcy Court, subject to any order of the Bankruptcy Court capping the amount of any such fees.

(c)        Any objections to Professional Fee Claims shall be served and filed no later than twenty-one (21) days after filing of the final applications for compensation or reimbursement.

2.7. ***Professional Fee Claims Estimate***

Each Professional shall estimate in good faith its unpaid Professional Fee Claim and other unpaid fees and expenses incurred in rendering services to the Debtors, before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

2.8. ***Post-Effective Date Fees and Expenses***

(a)        Except as otherwise specifically provided in the Plan, on and after the Effective Date, the Reorganized Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash all reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Debtors or the Reorganized Debtors, as applicable.

(b)        Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention for services rendered after such date shall terminate, and the Debtors or the Reorganized Debtors, as applicable, may employ any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE III.        CLASSIFICATION OF CLAIMS AND INTERESTS**.

3.1.        *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; *provided*, that a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.  All of the potential Classes for the Debtors are set forth herein.  Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Section 3.7 herein.

3.2.        *Formation of Debtor Groups for Convenience Only*.

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in respect of Claims and Interests under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets; and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

3.3.        *Summary of Classification*.

The following table designates the Classes of Claims against and Interests in each of the Debtors and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (c) presumed to accept or deemed to reject the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Priority Tax Claims, DIP Claims, and Restructuring Fees and Expenses have not been classified.  The classification of Claims and Interests set forth herein shall apply separately to each Debtor.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Priority Non-Tax Claims | Unimpaired | No (Presumed to Accept) |
| 3 | First Lien Claims | Impaired | Yes |
| 4 | Second Lien Debt Claims | Impaired | Yes |
| 5 | General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 6 | Intercompany Claims | Unimpaired / Impaired | No (Presumed to Accept / Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | No (Presumed to Accept / Deemed to Reject) |
| 8 | Existing Parent Equity Interests | Impaired | No (Deemed to Reject) |

3.4.        *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against,

any such Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim that is Unimpaired (including, for the avoidance of doubt, any Claim that is Reinstated) by the Plan.  Except as otherwise specifically provided in the Plan, the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim that is otherwise Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 3.5.   *Elimination of Vacant Classes*.

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan of such Debtor for purposes of voting to accept or reject such Debtor's Plan, and disregarded for purposes of determining whether such Debtor's Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

### 3.6.   *No Waiver*.

Nothing contained in the Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Disputed Claim.

### 3.7.   *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

## ARTICLE IV.   TREATMENT OF CLAIMS AND INTERESTS.

### 4.1.   *Other Secured Claims (Class 1)*

(a)   *Classification*:  Class 1 consists of the Other Secured Claims.  To the extent that Other Secured Claims are secured by different Collateral or different interests in the same Collateral, such Claims shall be treated as *separate* subclasses of Class 1 for purposes of voting to accept or reject the Plan and receiving distributions under the Plan.

(b)   *Treatment*:  The legal, equitable, and contractual rights of the holders of Other Secured Claims are unaltered by the Plan.  On or as soon as reasonably practicable after the Effective Date, except to the extent that a holder of an Allowed Other Secured Claim agrees to less favorable treatment, in full and final satisfaction of such Allowed Other Secured Claim, at the sole option of the Debtors or Reorganized Debtors (as applicable), with the consent of the Requisite Consenting First Lien Lenders, each such holder shall receive (i) payment in full in Cash, (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code, or (iii) such other treatment so as to render such holder's Allowed Other Secured Claim Unimpaired pursuant to section 1124 of the Bankruptcy Code.

(c)   *Impairment and Voting*:  Class 1 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the

Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Secured Claims.

### 4.2. *Priority Non-Tax Claims (Class 2)*

(a) *Classification*: Class 2 consists of Priority Non-Tax Claims.

(b) *Treatment*: The legal, equitable, and contractual rights of the holders of Priority Non-Tax Claims are unaltered by the Plan. On or as soon as reasonably practicable after the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Priority Non-Tax Claim, at the sole option of the Debtors or Reorganized Debtors (as applicable), with the consent of the Requisite Consenting First Lien Lenders, each such holder shall receive (i) payment in full in Cash, (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code, or (iii) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c) *Impairment and Voting*: Class 2 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

### 4.3. *First Lien Claims (Class 3)*

(a) *Classification*: Class 3 consists of First Lien Claims.

(b) *Allowance*: The First Lien Claims are Allowed pursuant to section 506(a) of the Bankruptcy Code in the aggregate amount of $506.6 million. Holders of First Lien Claims and the First Lien Administrative Agent shall not be required to file proofs of Claim on account of their First Lien Claims.

(c) *Treatment*: On or as soon as reasonably practicable after the Effective Date, except to the extent that a holder of an Allowed First Lien Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed First Lien Claim, each such holder shall receive, in accordance with the Restructuring Transactions, its Pro Rata Share of 96.5% of the New Equity Interests subject to dilution by any New Equity Interests issued on account of the Management Incentive Plan and the Tranche B Loans.

(d) *Impairment and Voting*: Class 3 is Impaired, and the holders of First Lien Claims in Class 3 are entitled to vote to accept or reject the Plan.

### 4.4. *Second Lien Debt Claims (Class 4)*

(a) *Classification*: Class 4 consists of Second Lien Debt Claims.

(b) *Treatment*: On or as soon as reasonably practicable after the Effective Date, except to the extent that a holder of an Allowed Second Lien Debt Claim agrees to a less favorable treatment, in full and final satisfaction of such Allowed Second Lien Debt Claim, each such holder shall receive in accordance with the Restructuring Transactions its Pro Rata Share of 3.5% of the New Equity

Interests subject to dilution by the Management Incentive Plan and the New Equity Interests issued on account of the Tranche B Loans.

(c)      *Impairment and Voting.*  Class 4 is Impaired, and the holders of Second Lien Debt Claims are entitled to vote to accept or reject the Plan.

4.5.      ***General Unsecured Claims (Class 5)***

(a)      *Classification*:  Class 5 consists of General Unsecured Claims.

(b)      *Treatment*:  The legal, equitable, and contractual rights of the holders of General Unsecured Claims are unaltered by the Plan.  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on and after the Effective Date the Reorganized Debtors shall continue to pay each Allowed General Unsecured Claim or dispute each General Unsecured Claim in the ordinary course of business.

(c)      *Impairment and Voting*:  Class 5 is Unimpaired, and the holders of General Unsecured Claims in Class 5 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such General Unsecured Claims.

4.6.      ***Intercompany Claims (Class 6)***

(a)      *Classification*:  Class 6 consists of Intercompany Claims.

(b)      *Treatment*:  Except as provided for in Section 5.2 of this Plan, on or as soon as reasonably practicable after the Effective Date, all Intercompany Claims will be adjusted, Reinstated, or discharged, as determined by the Debtors or the Reorganized Debtors, as applicable, in their sole discretion, or as provided in the Restructuring Transactions Exhibit.

(c)      *Impairment and Voting*:  Class 6 is either (i) Unimpaired, and the holders of Intercompany Claims in Class 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Impaired, and such holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

4.7.      ***Intercompany Interests (Class 7)***

(a)      *Classification*:  Class 7 consists of Intercompany Interests.

(b)      *Treatment*:  Except as provided for in Section 5.2 of this Plan, on or as soon as reasonably practicable after the Effective Date, all Intercompany Interests will be adjusted, Reinstated, or discharged as determined by the Debtors or the Reorganized Debtors, as applicable, in their sole discretion, or as provided in the Restructuring Transactions Exhibit; *provided*, *however*, Section 510(b) Claims will be cancelled, released, or extinguished pursuant to Section 4.8.

(c)      *Impairment and Voting*:  Class 7 is either (i) Unimpaired, and holders of Intercompany Interests in Class 7 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (ii) Unimpaired, and such holders of Intercompany Interests

are conclusively deemed to have rejected the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

### 4.8. *Existing Parent Equity Interests (Class 8)*

(a) *Classification*: Class 8 consists of Existing Parent Equity Interests.

(b) *Treatment*: On the Effective Date, Existing Parent Equity Interests shall be cancelled, released, and extinguished and will be of no further force and effect.

(c) *Impairment and Voting*: Class 8 is Impaired and its holders are not receiving or retaining any property under the Plan; accordingly, the holders of Existing Parent Equity Interests in Class 8 are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Existing Parent Equity Interest are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Parent Equity Interests.

## ARTICLE V.   MEANS FOR IMPLEMENTATION.

### 5.1. *Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distribution, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Claim or an Interest holder may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made on account of such Allowed Claim or Allowed Interest, including pursuant to the transactions set forth in the Restructuring Transactions Exhibit. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Allowed Claims, Allowed Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise, settlement and transactions are in the best interests of the Debtors, their Estates, and holders of Allowed Claims and Allowed Interests, and is fair, equitable, and within the range of reasonableness. Subject to the provisions of this Plan governing distributions, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final. As consideration for, among other things, the releases provided pursuant to this Plan, the Consenting Parties have agreed pursuant to the Restructuring Support Agreement, for the benefit of the Debtors and the Debtors' Estate, to make contributions to enable the implementation of this Plan, such contributions being fundamentally necessary to the implementation of this Plan. The contributions of the Consenting Parties include, but are not limited to, the following: (i) certain Consenting First Lien Lenders have agreed to backstop the DIP Facility and (ii) the Consenting Sponsor has agreed to enter into the Litigation Trust Agreement including the distribution of litigation proceeds as detailed therein in exchange for the releases set forth in <u>Section 10.6</u>.

### 5.2. *Intercreditor Agreements*

Except as expressly provided in <u>Article IV</u> herein, all rights, entitlements, and distributions shall be subject to the Intercreditor Agreements, the priorities and payment waterfalls of which shall be incorporated, preserved, and enforced by the Plan, the Debtors, the Consenting Creditors, and, as applicable, the Reorganized Debtors, pursuant to section 510 of the Bankruptcy Code.

5.3.    ***Continued Corporate Existence; Effectuating Documents; Corporate Action; Restructuring Transactions***.

(a)    Except as otherwise provided in the Plan, or the Plan Documents, the Debtors shall continue to exist after the Effective Date as Reorganized Debtors in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized and pursuant to the respective certificate of incorporation, certificate of formation, bylaws or operating agreement (or other analogous formation, constituent, or governance documents) in effect before the Effective Date or the New Corporate Governance Documents or other applicable corporate governance documents, except to the extent such certificate of incorporation, certificate of formation, bylaws or operating agreement (or other analogous formation, constituent, or governance documents) are amended by the Plan or otherwise, and to the extent any such document is amended, such document is deemed to be amended pursuant to the Plan and requires no further action or approval (other than any requisite filings required under applicable state or federal law).

(b)    Notwithstanding anything herein to the contrary, on or about the Effective Date or as soon as reasonably practicable thereafter, the Debtors or the Reorganized Debtors, as applicable, shall take all actions set forth in and contemplated by the Restructuring Transactions Exhibit, and enter into any transaction, including the Purchase Transaction, if applicable, and may take all actions as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary or appropriate to effectuate the Plan, including the Restructuring Transactions.

(c)    Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (i) the assumption of Executory Contracts and Unexpired Leases as provided herein, (ii) the selection of managers, directors, or officers for the Reorganized Debtors, (iii) the distribution of the New Equity Interests, (iv) the entry into or execution of the Exit Credit Agreement and the Exit Facility Documents as applicable, in each case, including any other definitive documentation related thereto, (v) implementation of, and performance under, the Management Incentive Plan in accordance with <u>Section 5.10</u> hereof, and (vi) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.  For the avoidance of doubt, the foregoing does not extend to any such actions required under applicable law by AcquisitionCo and any affiliate of AcquisitionCo (or any equity holder therein) prior to the closing of the Purchase Transaction.

(d)    The Confirmation Order shall and shall be deemed to, pursuant to sections 363, 1123, and 1142 of the Bankruptcy Code, authorize and direct parties, as applicable, among other things, to perform all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions (other than, in the event of the Purchase Transaction, any such actions required under applicable law by AcquisitionCo and any affiliate of AcquisitionCo (or any equity holder therein) prior to the closing of the Purchase Transaction).

(e)    Each officer, director, or manager of the Debtors is (and each officer, director, or manager of the Reorganized Debtors shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including, without limitation, any action by the stockholders or directors or managers of the Debtors or the Reorganized Debtors) except

for those expressly required pursuant to the Plan. For the avoidance of doubt, the foregoing does not extend to any actions required under applicable law by AcquisitionCo and any affiliate of AcquisitionCo prior to the closing of the Purchase Transaction.

(f)        All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the Plan or the Restructuring Transactions shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or by any other stakeholder, and with like effect as though such action had been taken unanimously by the stockholders, directors, managers, or officers, as applicable, of the Debtors or Reorganized Debtors.

(g)        In the event the Debtors, on or before the Purchase Transaction Election Date, elect to pursue the Purchase Transaction, the Debtors shall implement the Purchase Transaction as set forth herein and in the Restructuring Transactions Exhibit.

### 5.4.        *Intercompany Interests; Corporate Reorganization.*

To the extent Reinstated under the Plan, on the Effective Date, the Intercompany Interests (a) shall be Reinstated for the ultimate benefit of the holders of Claims that receive New Equity Interests under the Plan, and their holders shall receive no recovery or distribution, and (b) without the need for any further corporate action or approval of any board of directors, board of managers, managers, management, or stockholders of any Debtor or Reorganized Debtor, as applicable, the certificates and all other documents representing the Reinstated Intercompany Interests shall be deemed to be in full force and effect.

### 5.5.        *Exit Credit Agreement*.

(a)        On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, and enter into the Exit Facility Documents without further (i) notice to or order or other approval of the Bankruptcy Court, (ii) act or omission under applicable law, regulation, order, or rule, (iii) vote, consent, authorization, or approval of any Person, or (iv) action by the holders of Claims or Interests. The Exit Facility Documents shall constitute legal, valid, binding and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with their respective terms and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination under applicable law, the Plan, or the Confirmation Order. The financial accommodations to be extended pursuant to the Exit Facility Documents (and other definitive documentation related thereto) are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

(b)        Confirmation of the Plan shall be deemed approval of the Exit Term Loan Facility and the Exit Facility Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization of the Reorganized Debtors to enter into, execute, and deliver the Exit Facility Documents.

(c)        On the Effective Date, all Liens and security interests granted pursuant to the Exit Facility Documents shall be (i) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such document, with the priorities established in respect thereof under applicable non-bankruptcy law and (ii) not subject to avoidance, recharacterization, or subordination under any applicable law, the Plan, or the Confirmation Order.

(d)    The Reorganized Debtors and the Persons granted Liens and security interests under the Exit Facility Documents are authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order without the need for any filings or recordings) and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

5.6.    ***Section 1145 Exemption***.

(a)    The offer and sale of the New Equity Interests (including New Equity Interests issued on account of the Backstop Premium) to holders of Allowed First Lien Claims and Allowed Second Lien Debt Claims (collectively, the "**1145 Securities**") shall be exempt, pursuant to section 1145(a) of the Bankruptcy Code, without further act or action by any Entity, from registration under (i) the Securities Act of 1933, as amended (the "**Securities Act**"), and all rules and regulations promulgated thereunder and (ii) any state or local law requiring registration for the offer, issuance, or distribution of Securities.

(b)    The 1145 Securities offered or sold by the Reorganized Debtors under the Plan pursuant to section 1145(a) of the Bankruptcy Code will be unrestricted securities as set forth in section 1145(c) of the Bankruptcy Code and, generally, may be sold without registration under the Securities Act by the recipients thereof, subject to: (i) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an "underwriter" in section 2(a)(11) of the Securities Act, (ii) compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the U.S. Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (iii) the restrictions, if any, on the transferability of such 1145 Securities, including any restrictions on the transferability under the terms of the Reorganized Debtors' organizational documents; (iv) any applicable procedures of DTC and (v) any other applicable regulatory approvals and requirements.

5.7.    ***Cancellation of Existing Securities and Agreements***.

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan and the DIP Documents, including with respect to Executory Contracts or Unexpired Leases that shall be assumed by the Reorganized Debtors, or any contract, instrument, or other agreement or document created in connection with the Plan, on the Effective Date, all agreements, instruments, notes, certificates, mortgages, security documents, and any other instruments or documents evidencing any Claim or Interest (other than Intercompany Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no further force or effect, without any further act or action of any person under any applicable agreement, instrument, document, law, regulation, order, or rule, and the obligations of the Debtors thereunder shall be deemed automatically fully satisfied, released, and discharged.    Notwithstanding such cancellation and discharge, the First Lien Credit Agreement, the Note Purchase Agreement, the Second Lien Credit Agreement, and the Intercreditor Agreements shall continue in effect solely (i) to the extent necessary to allow the holders of Allowed First Lien Claims and Second Lien Debt Claims to receive distributions under the Plan, (ii) to the extent necessary to allow the Debtors, the Reorganized Debtors, and/or the Administrative Agents to make post-Effective Date distributions or take such other action pursuant to the Plan on account of Allowed First Lien Claims and Allowed Second Lien Debt Claims, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims,

27

and (iii) to appear in the Chapter 11 Cases, *provided*, *however*, that nothing in the foregoing shall affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any liability or expense to the Reorganized Debtors.  Nothing contained herein shall be deemed to cancel, terminate, release, or discharge the obligation of the Debtors or any of their counterparties under any Executory Contract or lease to the extent such Executory Contract or lease has been assumed by the Debtors pursuant to a Final Order of the Bankruptcy Court or hereunder.

   5.8.  ***Cancellation of Liens***.

     (a)  Except as otherwise specifically provided herein, including pursuant to Section 5.5(a) of the Plan, all notes, instruments, certificates evidencing debt of the Debtors and Existing Parent Equity Interests will be cancelled and obligations of the Debtors thereunder will be discharged and of no further force or effect, except, where applicable, for the purpose of allowing the applicable agents and trustees to receive distributions from the Debtors under the Plan and to make any further distributions to the applicable holders on account of their Claims.

     (b)  Upon the full payment or other satisfaction of its Allowed Other Secured Claim, or promptly thereafter, any Lien securing any Other Secured Claim shall be deemed released and the holder of such Allowed Other Secured Claim shall deliver to the Debtors or the Reorganized Debtors, as applicable, any Collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

     (c)  After the Effective Date and following the (i) distributions to holders on account of Allowed DIP Claims, Allowed First Lien Claims and Allowed Second Lien Debt Claims, and (ii) payment of the Restructuring Fees and Expenses (including, without limitation, attorneys' and financial advisors' reasonable and documented fees and expenses), any Lien securing such Claims shall be deemed released and the Debtors or the Reorganized Debtors, at their expense, may, in their sole discretion, take any action necessary to terminate, cancel, extinguish, and/or evidence the release of any and all mortgages, deeds of trust, Liens, pledges, and other security interests with respect to the First Lien Claims and the Second Lien Debt Claims, including, without limitation, the preparation and filing, in form, substance, and content acceptable to the Requisite Consenting First Lien Lenders and Requisite Consenting Second Lien Lenders, as applicable, of any and all documents necessary to terminate, satisfy, or release any mortgages, deeds of trust, Liens, pledges, and other security interests held by the Administrative Agents, the First Lien Lenders, the Noteholders, and the Second Lien Lenders, including, without limitation, UCC-3 termination statements.

   5.9.  ***Officers and Boards of Directors***.

     (a)  On or after the Effective Date (and in the event of the Purchase Transaction, in accordance with the Acquisition Agreement), the members of the New Board shall be appointed to serve pursuant to the terms of the applicable New Corporate Governance Documents.  The current chief executive officer of Mobileum shall serve as a member of the New Board.  The composition of each board of directors or board of managers of a Reorganized Debtor, as applicable, and, to the extent applicable, the officers of each Reorganized Debtor, shall be disclosed prior to the Confirmation Hearing in accordance with section 1129(a)(5) of the Bankruptcy Code.

     (b)  The selection of the initial members of the board of directors or board managers of the Reorganized Parent, as applicable, shall be subject to the New Corporate Governance Documents

WEIL:\99859063\1\63808.0003

and express provisions of the Plan (and in the event of the Purchase Transaction, in accordance with the Acquisition Agreement). The initial New Board will have five (5) members, comprised of (i) the chief executive officer of Mobileum, and (ii) four (4) additional members selected by certain First Lien Lenders as set forth in the Restructuring Support Agreement and the New Corporate Governance Documents, in each case selected in consultation with the First Lien Lender Group and the Debtors. Additionally, the Second Lien Ad Hoc Group shall have the ability to designate one (1) observer to the New Board.

(c)     The officers of the respective Debtors immediately before the Effective Date, as applicable, shall serve as the initial officers of each of the respective Reorganized Debtors on the Effective Date. After the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

(d)     Except to the extent that a member of the board of directors or a member of the board of managers, as applicable, of a Debtor continues to serve as a director or manager of such Debtor on and after the Effective Date, the members of the board of directors or board of managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date and each such director or manager will be deemed to have resigned or shall otherwise cease to be a director or manager of the applicable Debtor on the Effective Date. Commencing on the Effective Date, each of the directors and managers of each of the Reorganized Debtors shall be elected and serve pursuant to the terms of the applicable organizational documents of such Reorganized Debtor and may be replaced or removed in accordance with such organizational documents.

5.10.     ***Management Incentive Plan***.

No later than 60 days following the Effective Date, the New Board shall implement an equity-based management incentive plan under which ten percent (10%) of the New Equity Interests issued on the Effective Date will be reserved for issuance of awards to employees, non-employee directors and other service providers of the Reorganized Debtors (the "**Management Incentive Plan**"), on terms and conditions (including with respect to participants, forms of awards, individual allocations, and vesting conditions) to be determined by the New Board in consultation with the Reorganized Debtors' chief executive officer.

5.11.     ***Authorization, Issuance, and Delivery of New Equity Interests.***

On the Effective Date, Reorganized Parent is authorized to transfer, issue or cause to be issued and shall transfer or issue the New Equity Interests for distribution in accordance with the terms of the Plan without the need for any further board, stockholder or other corporate action. All of the New Equity Interests transferrable or issuable under the Plan (or in the event of a Purchase Transaction, received pursuant to the Acquisition Agreement), when so transferred or issued, shall be duly authorized, validly issued, fully paid, and non-assessable. To the extent applicable, Reorganized Parent's New Corporate Governance Documents shall have provided for sufficient shares of authorized New Equity Interests to effectuate the issuance of New Equity Interests contemplated by and in connection with the Plan, including the Management Incentive Plan, and Reorganized Parent shall issue or reserve for issuance a sufficient number of shares of New Equity Interests to effectuate all such issuances. Each holder of New Equity Interests shall be deemed, without further notice or action, to have agreed to be bound by the New Corporate Governance Documents, as the same may be amended form time to time following the Effective Date in accordance with their terms. The New Corporate Governance Documents shall be binding on all Entities receiving New Equity Interests (and their respective successors and permitted assigns), whether received pursuant to the Plan (or in the event of a Purchase Transaction, received pursuant to the Acquisition

Agreement) or otherwise and regardless of whether such Entity executes or delivers a signature page to any New Corporate Governance Document.

### 5.12. *Nonconsensual Confirmation*.

To the extent all Classes entitled to vote to accept or reject the Plan have not voted to accept the Plan, the Debtors intend to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code as to any Classes that reject or are deemed to reject the Plan.

### 5.13. *Closing of the Chapter 11 Cases*.

After an Estate has been fully administered, the Reorganized Debtors shall be authorized, but not directed, to submit an order to the Bankruptcy Court under certification of counsel to close the applicable Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

### 5.14. *Notice of Effective Date*.

As soon as practicable, the Debtors shall file a notice of the occurrence of the Effective Date with the Bankruptcy Court.

### 5.15. *Separate Plans*.

Notwithstanding the combination of separate plans of reorganization for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor.  Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

### 5.16. *Litigation Trust.*

On the Effective Date, pursuant to the terms hereof and of the Litigation Trust Agreement, the Debtors or Reorganized Debtors (as applicable) shall be authorized to execute, deliver, and enter into the Litigation Trust Agreement.

## ARTICLE VI.    DISTRIBUTIONS.

### 6.1. *Distributions Generally*.

The Disbursing Agent shall make all distributions under the Plan to the appropriate holders of Allowed Claims in accordance with the terms of the Plan.

### 6.2. *Distributions Subject to Intercreditor Agreements.*

Except as expressly provided in Article IV of this Plan, distributions under the Plan to holders of First Lien Claims and Second Lien Debt Claims shall be made subject to and in accordance with the Intercreditor Agreements.

### 6.3. *Distribution Record Date*.

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by the Debtors or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims or

Interests.  The Debtors or the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims or Interests occurring on or after the Distribution Record Date.  In addition, with respect to payment of any Cure Amounts or disputes over any Cure Amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Distribution Record Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure Amount.

### 6.4.    *Date of Distributions*.

Except as otherwise provided in this Plan (including payments made in the ordinary course of the Debtors' business) or as paid pursuant to a prior Bankruptcy Court order, on the Effective Date or, if a Claim or Interest is not Allowed on the Effective Date, on the date that such Claim or Interest becomes Allowed, or, in each case, as soon as reasonably practicable thereafter, or as otherwise determined in accordance with the Plan and Confirmation Order, including, without limitation, the treatment provisions of Article IV of the Plan, each holder of an Allowed Claim shall receive the full amount of the distributions that the Plan provides for Allowed Claims in the applicable Class provided in the Plan; *provided* that the Reorganized Debtors may implement periodic distribution dates to the extent they determine them to be appropriate; *provided, further,* that the Reorganized Debtors may make distributions of New Equity Interests following the Effective Date, including to holders of Disputed Claims that become Allowed Claims; *provided*, *that*, any holder as of the Distribution Record Date may send a written notice to the Disbursing Agent that the distributions in respect of such holder's Allowed Claims shall be made to one or more of its Affiliates, designees or Related Funds.  If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII; *provided* that any New Equity Interest that is issuable to holders of Allowed Claims but is withheld from distribution on account of a holder of a Disputed Claim shall not be issued until such time such Disputed Claim is resolved and the New Equity Interests are to be distributed.  Except as specifically provided in the Plan, holders of Allowed Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

### 6.5.    *Disbursing Agent*.

All distributions under the Plan shall be made by the applicable Reorganized Debtor, as Disbursing Agent, on or after the Effective Date or as otherwise provided herein.  A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties, and all reasonable fees and expenses incurred by such Disbursing Agents directly related to distributions hereunder shall be reimbursed by the Reorganized Debtors.

### 6.6.    *Rights and Powers of Disbursing Agent*.

(a)    From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or *ultra vires* acts of such Disbursing Agent.  No holder of a Claim or Interest or other party in interest shall have or pursue any Claim or Cause of Action vested in a Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by such Disbursing Agent to be necessary and proper to implement the provisions hereof.

31

(b)     Powers of Disbursing Agent.  The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (ii) make all applicable distributions or payments provided for under the Plan; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers (A) as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any Final Order issued after the Effective Date) or pursuant to the Plan or (B) as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

(c)     Expenses Incurred on or After the Effective Date.  Except as otherwise ordered by the Bankruptcy Court and subject to the written agreement of the Reorganized Debtors, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including for reasonable attorneys' and other professional fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

## 6.7.     *Expenses of Disbursing Agent*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable and documented fees and expenses incurred by the Disbursing Agent acting in such capacity (including reasonable and documented attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

## 6.8.     *No Postpetition Interest on Claims*.

Except as otherwise specifically provided for in the Plan, the Confirmation Order, the DIP Orders, or another order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

## 6.9.     *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim shall be made to a Disbursing Agent, who shall transmit such distribution to the applicable holders of Allowed Claims; *provided*, *that*, any holder as of the Distribution Record Date may send a written notice to the Disbursing Agent that the distributions in respect of such holder's Allowed Claims shall be made to one or more of its Affiliates, designees or Related Funds; *provided further*, that such holder and relevant Affiliate, designee, or Related Fund comply with all applicable withholding and reporting requirement set forth in Section 6.20 of the Plan.  In the event that any distribution to any holder is returned as undeliverable, no further distributions shall be made to such holder unless and until such Disbursing Agent is notified in writing of such holder's then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.  Nothing herein shall require the Disbursing Agent to attempt to locate holders of undeliverable distributions and, if located, assist such holders in complying with Section 6.20 of the Plan.

## 6.10.     *Distributions as of Effective Date*.

Distributions to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

WEIL:\99859063\1\63808.0003

6.11.    ***Unclaimed Property***.

One year from the later of (i) the Effective Date and (ii) the date that is ten (10) Business Days after the date of a distribution on an Allowed Claim, all distributions payable on account of such Claim that are undeliverable or otherwise unclaimed shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revert to the Reorganized Debtors or their successors or assigns, and all claims of any other person (including the holder of a Claim in the same Class) to such distribution shall be discharged and forever barred.  The Reorganized Debtors and the Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records and the Bankruptcy Court's filings.

6.12.    ***Time Bar to Cash Payments***.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Reorganized Debtors, and any Claim in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check shall be made to the applicable Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued, prior to the expiration of the ninety (90) day period.

6.13.    ***Manner of Payment under Plan***.

Except as otherwise specifically provided in the Plan, at the option of the Debtors or the Reorganized Debtors, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.14.    ***Satisfaction of Claims***.

Except as otherwise specifically provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, release, settlement, and discharge of and exchange for such Allowed Claims.

6.15.    ***Fractional Stock***.

No fractional New Equity Interests shall be distributed.  If any distributions of New Equity Interests pursuant to the Plan would result in the issuance of a fractional share of New Equity Interests, then the number of shares of New Equity Interests to be issued in respect of such distribution will be calculated to one decimal place and rounded up or down to the closest whole share (with a half share or greater rounded up and less than a half share rounded down).  The total number of shares of New Equity Interests to be distributed in connection with the Plan shall be adjusted as necessary to account for the rounding provided for in this <u>Section 6.15</u>.  No consideration shall be provided in lieu of fractional shares that are rounded down.  Neither the Reorganized Debtors nor the Disbursing Agent shall have any obligation to make a distribution that is less than one (1) share of New Equity Interests.  Fractional shares of New Equity Interests that are not distributed in accordance with this section shall be returned to, and the ownership thereof shall vest in, the Reorganized Debtors.

6.16.     ***Minimum Cash Distributions***.

The Disbursing Agent shall not be required to make any distribution of Cash less than one hundred dollars ($100) to any holder of an Allowed Claim; *provided*, *however*, that if any distribution is not made pursuant to this Section 6.16, such distribution shall be added to any subsequent distribution to be made on behalf of the holder's Allowed Claim.

6.17.     ***Setoffs***.

(a)     The Debtors and the Reorganized Debtors, or such Entity's designee as instructed by such Debtor or Reorganized Debtor, as applicable, may, but shall not be required to, set off or recoup against any Claim, and any distribution to be made pursuant to the Plan on account of such Claim, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors or the Reorganized Debtors or its successors may have against the holder of such Claim pursuant to the Bankruptcy Code or applicable nonbankruptcy law; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or a Reorganized Debtor or its successor of any claims, rights, or Causes of Action that a Debtor or Reorganized Debtor or its successor or assign may possess against the holder of such Claim.

(b)     In no event shall any holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor, unless (i) the Debtors or the Reorganized Debtors, as applicable, have consented or (ii) such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise. Notwithstanding the foregoing, this paragraph does not create any new rights to setoff or recoupment that did not exist under any applicable law or agreement in existence prior to the Effective Date.

6.18.     ***Allocation of Distributions between Principal and Interest***.

Except as otherwise provided in the Plan and subject to Section 6.8 herein or as otherwise required by law (as reasonably determined by the Reorganized Debtors), distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

6.19.     ***No Distribution in Excess of Amount of Allowed Claim***.

Notwithstanding anything in the Plan to the contrary, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

6.20.     ***Withholding and Reporting Requirements***.

(a) *Withholding Rights*.  In connection with the Plan, any party issuing any instrument or making any distribution described in the Plan or payment in connection therewith shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.  In the case of a non-Cash issuance or distribution that is subject to withholding, and subject to Section 6.20(b) of the Plan, the distributing party may withhold an appropriate portion of such distributed property and either (i) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any

34

advance payment of the withholding tax) or (ii) pay the withholding tax using its own funds and retain such withheld property.  Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.  Notwithstanding the foregoing, each holder of an Allowed Claim or any other Entity that receives a distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any taxes imposed by any Governmental Unit, including, without limitation, income, withholding, and other taxes, on account of such distribution.  Any party issuing any instrument or making any distribution pursuant to the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall reasonably cooperate with the relevant recipients to minimize any such withholding to the extent permitted by applicable law.

(b)     *Forms*.  Any party entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Entity designated by the Reorganized Debtors (which Entity shall subsequently deliver to the Disbursing Agent any applicable Internal Revenue Service ("**IRS**") Form W-8 or Form W-9 received) an appropriate IRS Form W-9 or (if the payee is a foreign Entity) an appropriate IRS Form W-8 and any other forms or documents reasonably requested by any Reorganized Debtor to reduce or eliminate any withholding required by any federal, state, or local taxing authority.  If such request is made by the Reorganized Debtors, the Disbursing Agent, or such other Entity designated by the Reorganized Debtors or Disbursing Agent and such party fails to comply before the date that is 180 days after the request is made, the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and any Claim in respect of such distribution shall be discharged and forever barred from assertion against such Reorganized Debtor or its respective property.

## ARTICLE VII.     PROCEDURES FOR DISPUTED CLAIMS.

### 7.1.     *Disputed Claims Generally*.

Notwithstanding section 502(a) of the Bankruptcy Code, and except as otherwise set forth in the Plan or Confirmation Order, holders of Claims, other than Claims arising from the rejection of an Executory Contract or Unexpired Lease. need not file proofs of Claim with the Bankruptcy Court, and the Reorganized Debtors and holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims as if the Chapter 11 Cases had not been commenced.  The holders of Claims other than Claims arising from the rejection of an Executory Contract or Unexpired Lease and Section 510(b) Claim shall not be subject to any Claims resolution process in the Bankruptcy Court.  Except for proofs of Claim in respect of Claims arising from the rejection of an Executory Contract or Unexpired Lease, any filed Claim, regardless of the time of filing, and including Claims filed after the Effective Date, shall be deemed withdrawn.  The Debtors and the Reorganized Debtors, as applicable, shall be permitted to seek the classification of any Claim as a Section 510(b) Claim by filing an objection to or other pleading with respect to such Claim with the Bankruptcy Court and shall not be required to commence an adversary proceeding to effect such classification.  From and after the Effective Date, the Reorganized Debtors may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court.

### 7.2.     *Objections to Claims*.

Except insofar as a Claim is Allowed under the Plan, the Debtors or the Reorganized Debtors, as applicable, shall be entitled to object to Claims.  After the Effective Date, the Reorganized Debtors shall have and retain any and all rights and defenses that the Debtors had with regard to any Claim or Interest.  Any objections to Claims shall be served and filed on or before the later of (i) two (2) years

after the Effective Date and (ii) such later date as may be fixed by the Bankruptcy Court.  The expiration of such period shall not limit or affect the Debtors' or the Reorganized Debtors' rights to dispute Claims other than through an objection to a Claim and/or to proof of such Claim.

### 7.3.   *Estimation of Claims.*

The Debtors or the Reorganized Debtors, as applicable, may (i) determine, resolve, and otherwise adjudicate all contingent, unliquidated, and Disputed Claims in the Bankruptcy Court and (ii) at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any Claim, including, without limitation, at any time during litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on the Allowed amount of such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Allowed amount of such Claim, the Debtors or the Reorganized Debtors, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.

### 7.4.   *Disallowance of Claims.*

Any Claims held by Entities from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.

### 7.5.   *No Distributions Pending Allowance.*

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Disputed Claim becomes an Allowed Claim.

### 7.6.   *Distributions after Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan, including the treatment provisions provided in Article IV of the Plan.

### 7.7.   *Claim Resolution Procedures Cumulative.*

All of the Claims, objection, estimation, and resolution procedures in the Plan are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently settled,

WEIL:\99859063\1\63808.0003

compromised, withdrawn, or resolved in accordance with the Plan without further notice or Bankruptcy Court approval.

### 7.8. *Single Satisfaction of Claims and Interests.*

In no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim or Interest exceed 100 percent of the underlying Allowed Claim or Interest plus applicable interest required to be paid hereunder, if any.

## ARTICLE VIII.   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1. *General Treatment*.

(a)     As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, and subject to Section 8.6 of the Plan, all Executory Contracts and Unexpired Leases which have not expired by their own terms on or prior to the Confirmation Date, shall, subject to the reasonable consent of the Requisite Consenting First Lien Lenders, be deemed assumed, except for any Executory Contract or Unexpired Lease, in each case, with the reasonable consent of the Requisite Consenting First Lien Lenders, that (a) previously has been assumed, assumed or assigned, or rejected pursuant to a Final Order of the Bankruptcy Court, (b) is the subject of a separate (i) assumption motion filed by the Debtors, or (ii) rejection motion filed by the Debtors under section 365 of the Bankruptcy Code before the Confirmation Date, (c) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts, or (d) is the subject of a pending Cure Dispute.

(b)     Subject to (i) satisfaction of the conditions set forth in Section 8.1(a) herein, (ii) resolution of any disputes in accordance with Section 8.2 herein with respect to the Executory Contracts or Unexpired Leases, and (iii) the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each Executory Contract and Unexpired Lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor or assignee in accordance with its terms, except as modified by the provision of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or assumption and assignment, or applicable law.

(c)     To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

(d)     The Debtors reserve the right, on or before the Effective Date, to amend the Schedule of Rejected Contracts, to add or remove any Executory Contract or Unexpired Lease; *provided*, the Debtors or Reorganized Debtors, as applicable, may amend the Schedule of Rejected Contracts to add or delete any Executory Contracts or Unexpired Leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

8.2.      ***Determination of Cure Disputes and Deemed Consent***.

(a)      The Debtors shall file, as part of the Plan Supplement, the Schedule of Rejected Contracts.

(b)      Prior to the Confirmation Hearing, the Debtors shall serve a notice on parties to Executory Contracts and Unexpired Leases to be assumed or assumed and assigned, as applicable, reflecting the Debtors' intention to assume or assume and assign, as applicable, such contract or lease in connection with the Plan and setting forth the proposed Cure Amount (if any).  If a counterparty to any Executory Contract or Unexpired Lease that the Debtors or Reorganized Debtors, as applicable, intend to assume or assume and assign (i.e., it is not listed on the Schedule of Rejected Contracts ) or the proposed Cure Amount is not listed on such a notice, the proposed Cure Amount for such Executory Contract or Unexpired Lease shall be deemed to be Zero Dollars ($0).

(c)      If there is a Cure Dispute pertaining to assumption or assumption and assignment of an Executory Contract or Unexpired Lease, such dispute shall be heard by the Bankruptcy Court prior to such assumption or assumption and assignment, as applicable, being effective, *provided*, *however*, before the Effective Date, the Debtors (or, after the Effective Date, the Reorganized Debtors), with the reasonable consent of the Requisite Consenting First Lien Lenders, may settle any dispute regarding the Cure Amount or the nature thereof without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

(d)      Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the notice of the proposed assumption or assumption and assignment, as applicable, of such Executory Contract or Unexpired Lease or the relevant Cure Amount within ten (10) days of the service of the notice described above, (i) shall be deemed to have assented to (A) such Cure Amount and the nature thereof, (B) assumption or assumption and assignment, as applicable, of the applicable Executory Contract or Unexpired Lease notwithstanding any provision thereof that purports to (1) prohibit, restrict, or condition the transfer or assignment of such contract or lease, or (2) terminate or permit the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change, if any, in the ownership or control to the extent contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan, and (ii) shall be forever barred, estopped, and enjoined from challenging the validity of such assumption or assumption and assignment, as applicable, or the Allowed amount of such Cure Amount thereafter.

8.3.      ***Payments Related to Assumption or Assignment of Contracts and Leases***.

Subject to resolution of any Cure Dispute, all Cure Amounts shall be satisfied promptly, or otherwise as soon as practicable following the Effective Date, by the Reorganized Debtors.  Assumption or assumption and assignment, as applicable, of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of the assumption or assumption and assignment, as applicable.  Any proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order or approval of the Bankruptcy Court or any other Entity, upon the deemed assumption of such contract or Unexpired Lease.

8.4.    ***Rejection Claims***.

In the event that the rejection of an Executory Contract or Unexpired Lease results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim for such Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors no later than thirty (30) days after the later of (i) the Effective Date or (ii) the effective date of rejection of such Executory Contract or Unexpired Lease.  Any such Claims, to the extent Allowed, shall be classified in Class 5 (General Unsecured Claims).

8.5.    ***Survival of the Debtors' Indemnification Obligations***.

(a)    Except as otherwise provided in the Plan or the Confirmation Order, and subject to the Schedule of Retained Causes of Action, to the fullest extent permitted by applicable law, any and all obligations of the Debtors pursuant to their corporate charters, bylaws, limited liability company agreements, memorandum and articles of association, or other organizational documents or agreements to indemnify all current officers, directors, agents or employees, in each case solely in their capacity as such, employed by the Debtors on and/or after the Petition Date with respect to all past, present and future actions, suits, and proceedings against the Debtors or such officers, directors, agents, or employees based upon any act or omission for or on behalf of the Debtors (collectively, the "**Indemnification Obligations**") shall not be discharged, impaired, or otherwise affected by the Plan; *provided*, that, the Debtors or the applicable Reorganized Debtors, as applicable, shall not indemnify any such officers, directors, agents, or employees of the Debtors for any Claims or Causes of Action arising out of or relating to any act or omission for which indemnification is barred under applicable law or that is excluded under the terms of the foregoing organizational documents or applicable agreements governing the Debtors' Indemnification Obligations.  The Reorganized Debtors shall not indemnify any Persons for any claims or Causes of Action arising out of or relating to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence or willful misconduct.  Except as otherwise provided in the Plan, all such Indemnification Obligations shall be deemed and treated as Executory Contracts that are assumed by the Debtors under the Plan.

8.6.    ***Employee Arrangements***.

(a)    Unless otherwise listed on the Schedule of Rejected Contracts, all Employee Arrangements that exist as of the Petition Date shall be assumed on the Effective Date as Executory Contracts pursuant to sections 365 and 1123 of the Bankruptcy Code; *provided*, *that*, to the extent an Employee Arrangement of an insider (as defined in the Bankruptcy Code) has not been disclosed to the Requisite Consenting First Lien Lenders prior to the Effective Date (an "**Undisclosed Employment Arrangement**") and the assumption of such Undisclosed Employment Arrangement would not reasonably be expected to result in material liability to the Reorganized Debtors (as determined by the Requisite Consenting First Lien Lenders acting in good faith), then such Undisclosed Employment Arrangement will be assumed pursuant to this Plan as if it had been disclosed to the Requisite Consenting First Lien Lenders prior to the Effective Date.  For the avoidance of doubt, neither the assumption nor the rejection of any Employee Arrangements shall trigger any applicable change of control, immediate vesting, termination, or similar provisions therein, including, without limitation, any right to severance pay in connection with a change in control.

(b)    Notwithstanding Section 8.6(a), any Employee Arrangement(s) providing for equity-based awards, as well as any equity-based awards or other Interest (or right to obtain or receive any equity-based award or other Interest) granted to or contractually promised to a current or former

employee, officer, director or contractor under an Employee Arrangement or otherwise, shall not be honored or assumed and will be deemed cancelled in consideration of approval of the Plan as of the Effective Date.  For the avoidance of doubt, if an Employee Arrangement assumed under this Plan provides in part for an award or potential award of equity-based awards or other Interests or consideration based on the value of Interests (whether vested or unvested) such Employee Arrangement shall be assumed in all respects other than the provisions of such arrangement  relating to such equity-based awards or Interest awards, which provisions shall be deemed cancelled and inoperative as of the Effective Date.

(c)     As of the Effective Date, the Debtors and the Reorganized Debtors shall continue to honor their obligations under all applicable workers' compensation programs and in accordance with all applicable workers' compensation Laws in states in which the Reorganized Debtors operate. Any Claims arising under workers' compensation programs shall be deemed withdrawn once satisfied without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that nothing in this Plan shall limit, diminish, or otherwise alter the Debtors' or Reorganized Debtors' defenses, Causes of Action, or other rights under applicable Law, including non-bankruptcy Law, with respect to any such workers' compensation programs; *provided, further,* that nothing herein shall be deemed to impose any obligations on the Debtors in addition to what is provided for under applicable state Law.

(d)     On the Effective Date the Management Services Agreements shall be deemed rejected and terminated, with the effect that any remaining or unperformed obligations of the parties shall be cancelled without  consideration or recourse.  Any obligations or amounts due and owing by the Debtors to H.I.G. from and after January 1, 2023 shall be waived by H.I.G. for no additional consideration, and deemed forever discharged.

8.7.     *Insurance Policies*.

(a)     All insurance policies to which any Debtor is a party as of the Effective Date, including any D&O Policy, shall be deemed to be and treated as Executory Contracts and shall be assumed by the applicable Debtors or the Reorganized Debtors and shall continue in full force and effect thereafter in accordance with their respective terms, and all such insurance policies shall vest in the Reorganized Debtors.  Coverage for defense and indemnity under the D&O Policy shall remain available to all individuals within the definition of "Insured" in any D&O Policy.  The Debtors and the Reorganized Debtors shall preserve and not terminate or otherwise reduce or in any way alter or interfere with the coverage under the RWI Policy.

(b)     In addition, after the Effective Date, all officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, to the extent set forth in such policies.

(c)     In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date, and any current directors, officers, members, managers, agents or employees of any of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date to the extent set forth in such policies.

(d)     In the event that the Debtors determine that an Allowed Claim is covered in full or in part under one of the Debtors' insurance policies, no distributions under the Plan shall be made on account of such Allowed Claim unless and until, and solely to the extent that, (i) the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (ii) an insurer authorized to issue a coverage position under such insurance policy, or the agent of such insurer, issues a formal determination, which the Debtors in their sole discretion do not contest, that coverage under such insurance policy is excluded or otherwise unavailable for losses arising from such Allowed Claim.  Any proceeds available pursuant to one of the Debtors' insurance policies shall reduce the Allowed amount of a Claim on a dollar-for-dollar basis.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.  If an applicable insurance policy has a SIR, the holder of an Insured Claim shall have an Allowed General Unsecured Claim or a Section 510(b) Claim, as applicable, against the applicable Debtor's Estate solely up to the amount of the SIR that may be established upon the liquidation of the Insured Claim.  Such SIR shall be considered satisfied pursuant to the Plan through allowance of the General Unsecured Claim or Section 510(b) Claim, as applicable, solely in the amount of the applicable SIR, if any; *provided*, however that nothing herein obligates the Debtors or the Reorganized Debtors to otherwise satisfy any SIR under any insurance policy.  Any recovery on account of the Insured Claim in excess of the SIR established upon the liquidation of the Claim shall be recovered solely from the Debtors' insurance coverage, if any, and only to the extent of available insurance coverage and any proceeds thereof.  Nothing in this Plan shall be construed to limit, extinguish, or diminish the insurance coverage that may exist or shall be construed as a finding that liquidated any Claim payable pursuant to an insurance policy.

### 8.8.     *Intellectual Property Licenses and Agreements*.

All intellectual property contracts, licenses, royalties, or other similar agreements to which the Debtors have any rights or obligations in effect as of the date of the Confirmation Order shall be deemed and treated as Executory Contracts pursuant to the Plan and shall be assumed by the respective Debtors and Reorganized Debtors and shall continue in full force and effect unless any such intellectual property contract, license, royalty, or other similar agreement otherwise is specifically rejected pursuant to a separate order of the Bankruptcy Court or is the subject of a separate rejection motion filed by the Debtors (with the reasonable consent of the Requisite Consenting First Lien Lenders) in accordance with the Plan.  Unless otherwise noted hereunder, all other intellectual property contracts, licenses, royalties, or other similar agreements shall vest in the Reorganized Debtors and the Reorganized Debtors may take all actions as may be necessary or appropriate to ensure such vesting as contemplated herein.

### 8.9.     *Assignment*.

To the extent provided under the Bankruptcy Code or other applicable law, any Executory Contract or Unexpired Lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such Executory Contract or Unexpired Lease (including, without limitation, those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment.  To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such Executory Contract or Unexpired Lease or that terminates or modifies such Executory Contract or Unexpired Lease or allows the counterparty to such Executory Contract or Unexpired Lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

8.10.    ***Modifications, Amendments, Supplements, Restatements, or Other Agreements***.

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

8.11.    ***Reservation of Rights***.

(a)    Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtors or the Reorganized Debtors or their respective affiliates has any liability thereunder.

(b)    Except as otherwise provided in the Plan, nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors and the Reorganized Debtors under any executory or non-Executory Contract or any unexpired or expired lease.

(c)    Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors under any executory or non-Executory Contract or any unexpired or expired lease.

(d)    If there is a Cure Dispute or a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection under the Plan, the Debtors or Reorganized Debtors, as applicable, shall have sixty (60) days following entry of a Final Order resolving such Cure Dispute to alter their treatment of such contract or lease by filing a notice indicating such altered treatment.

**ARTICLE IX.    CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND EFFECTIVE DATE**.

9.1.    ***Conditions Precedent to the Effective Date***.

(a)    The effectiveness of the Plan will be subject to the satisfaction or waiver in writing of customary conditions to effectiveness, as well as such other conditions as may be agreed by the Debtors and the Requisite Consenting First Lien Lenders, including, but not limited to, the conditions precedent to effectiveness set forth at <u>Section 9.1(b)</u> (as applicable); *provided*, *that*, any new conditions that would reasonably have a material and adverse effect on (i) the Consenting Sponsor, the Litigation Trust Agreement, the Litigation Proceeds Term Sheet, or any agreements related thereto, shall also require the agreement of the Consenting Sponsor, and (ii) the treatment, recoveries, rights, and obligations consistent with the Restructuring Term Sheet of the holders of Second Lien Debt Claims shall require the consent of the Requisite Consenting Second Lien Lenders.

(b)    The following are conditions precedent to the Effective Date of the Plan:

42

(i)        the Definitive Documents and Plan Documents will contain terms and conditions consistent with the Plan and the Restructuring Support Agreement or otherwise approved by the Debtors and the Requisite Consenting First Lien Lenders, and the Consenting Sponsor (as applicable) in accordance with the consent rights under the Restructuring Support Agreement and shall be executed and delivered by the parties thereto;

(ii)       the Restructuring Support Agreement shall not have been terminated and shall remain in full force and effect;

(iii)      the DIP Facility shall be in full force and effect and there shall be no Event of Default (as defined in the DIP Credit Agreement) continuing;

(iv)      all conditions precedent to the effectiveness of the Exit Credit Agreement shall have been satisfied or waived in accordance with the terms thereof, and the Exit Credit Agreement shall be in full force and effect and binding on all parties thereto;

(v)       the New Equity Interests shall have been issued by Reorganized Parent;

(vi)      the Professional Fee Escrow shall have been established and funded in Cash;

(vii)     the Bankruptcy Court shall have entered the Confirmation Order in a form and substance reasonably acceptable to the Requisite Consenting First Lien Lenders, and such order shall not have been reversed, stayed, amended, modified (other than with the consent of the Requisite Consenting First Lien Lenders), dismissed, or vacated;

(viii)    no court of competent jurisdiction (including the Bankruptcy Court) or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, limiting, preventing, or prohibiting the consummation of any of the Restructuring Transactions;

(ix)      the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan and the Restructuring Support Agreement (and subject to, and in accordance with, the consent rights set forth therein);

(x)       all Restructuring Fees and Expenses and any other professional fees and other amounts required to be paid on account of Consenting Creditors' and the Consenting Sponsor's fees and expenses pursuant to the Restructuring Support Agreement, in any Definitive Document or Plan Document, or in any order of the Bankruptcy Court related thereto shall have been paid in full and in Cash, including for the avoidance of doubt all accrued and unpaid fees and expenses of advisors to the First Lien Lender Group, Second Lien Ad Hoc Group and the Consenting Sponsor (subject to the limitations set forth in the Restructuring Support Agreement and herein);

(xi)      in the event of a Purchase Transaction, all conditions precedent to the closing of such sale under the Acquisition Agreement, other than the effectiveness of the Plan, shall have been satisfied or waived in accordance with the terms thereof; and

(xii)     all governmental and third-party approvals and consents necessary, if any, in connection with the transactions contemplated by the Plan shall have been obtained, not

be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions.

9.2.     ***Timing of Conditions Precedent.***

Notwithstanding when a condition precedent to the Effective Date occurs, for the purposes of the Plan, such condition precedent shall be deemed to have occurred simultaneously upon the completion of the conditions precedent to the Effective Date; *provided*, *that* to the extent a condition precedent (the "**Prerequisite Condition**") may be required to occur prior to another condition precedent (a "**Subsequent Condition**") then, for purposes of the Plan, the Prerequisite Condition shall be deemed to have occurred immediately prior to the applicable Subsequent Condition regardless of when such Prerequisite Condition or Subsequent Condition shall have occurred.

9.3.     ***Waiver of Conditions Precedent.***

(a)     Except as otherwise provided herein, all actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Each of the conditions precedent of the Plan may be waived in writing by the Debtors with the prior written consent of the Requisite Consenting First Lien Lenders, and, as applicable, the Requisite Consenting Second Lien Lenders and the Consenting Sponsor; *provided*, *however*, that waiver of the conditions precedent in Section 9.1(b)(vi) shall require the consent of the affected Professionals.  If the Plan is confirmed for fewer than all of the Debtors as provided for in Section 5.15 of the Plan, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur.

(b)     The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(c) shall be deemed waived by and upon the entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

9.4.     ***Effect of Non-Occurrence of the Effective Date.***

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall (a) constitute a waiver or release of any Claims by or against or any Interests in the Debtors, (b) prejudice in any manner the rights of any Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking by the Debtors, any of the Consenting Creditors, the Administrative Agents or any other Entity.

# ARTICLE X.     EFFECT OF CONFIRMATION OF PLAN.

10.1.     ***Vesting of Assets in the Reorganized Debtors.***

Except as otherwise provided herein, or in any agreement, instrument, or other documents incorporated into the Plan (including with respect to the transactions contemplated by the Restructuring Transactions Exhibit), on the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances unless expressly provided otherwise by the Plan or Confirmation Order.  In addition, all rights, benefits, and protections provided to any of the Debtors or their Estates pursuant to the Plan, the

Plan Supplement, or the Confirmation Order including, but not limited to, the release, exculpation, and injunction provisions provided in Article X of the Plan, shall vest in each respective Reorganized Debtor unless expressly provided otherwise by the Plan or the Confirmation Order.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professional fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

            10.2.      ***Binding Effect***.

        As of the Effective Date, the Plan shall bind all holders of Claims against and Interests in the Debtors and their respective successors and assigns, notwithstanding whether any such holders were (a) Impaired or Unimpaired under the Plan, (b) deemed to accept or reject the Plan, (c) failed to vote to accept or reject the Plan, or (d) voted to reject the Plan.

            10.3.      ***Discharge of Claims and Termination of Interests***.

        Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Definitive Documents or Plan Documents, the Plan or in a contract, instrument, or other agreement or document executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (i) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the holder of such a Claim or Interest has voted to accept the Plan.  Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

            10.4.      ***Term of Injunctions or Stays***.

        Unless otherwise provided herein or in a Final Order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

            10.5.      ***Injunction***.

        **Except as otherwise expressly provided in the Plan or for distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold,**

or may hold Claims or Interests that have been released pursuant to <u>Section 10.6(a)</u> or <u>Section 10.6(b)</u>, shall be discharged pursuant to <u>Section 10.3</u> of the Plan, or are subject to exculpation pursuant to <u>Section 10.7</u>, and all other parties in interest are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, and/or the Exculpated Parties (to the extent of the exculpation provided pursuant to <u>Section 10.7</u> with respect to the Exculpated Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or that otherwise indicates that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, settled, and/or treated, entitled to a distribution, or cancelled pursuant to the Plan or otherwise Disallowed; *provided* that such Persons who have held, hold, or may hold Claims against, or Interests in, a Debtor, a Reorganized Debtor, or an Estate shall not be precluded from exercising their rights and remedies, or obtaining the benefits, solely pursuant to and consistent with the terms of the Plan.

Subject in all respects to <u>Section 11.1</u>, no Entity or person may commence or pursue a Claim or Cause of Action of any kind against any Released Party or Exculpated Party that arose or arises from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Restructuring Support Agreement, the Definitive Documents, the Plan Documents, DIP Documents, Exit Term Loan Facility, First Lien Credit Agreement, Note Purchase Agreement, Second Lien Credit Agreement, Intercreditor Agreements, and any and all related agreements, instruments, and/or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, the Definitive Documents, the Plan Documents, the DIP Documents, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the DIP Documents, Exit Facility Documents, the Backstop Commitment Letter, the Restructuring Support Agreement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Equity Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable claim against a Released Party or Exculpated Party that has not been released or enjoined by the Plan and (ii) specifically authorizing such Entity or Person to bring such Claim or Cause of Action against any such Released Party or Exculpated Party.  The Bankruptcy Court shall have sole

and exclusive jurisdiction to determine whether a Claim or Cause of Action is colorable and, only to the extent legally permissible and as provided for in <u>Section 11.1</u>, shall have jurisdiction to adjudicate the underlying colorable Claim or Cause of Action.

      10.6.    *Releases*.

      (a)    <u>**Releases by the Debtors**</u>.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, on and after the Effective Date, the Released Parties are deemed conclusively, absolutely, unconditionally and irrevocably, released and discharged by the Debtors, the Reorganized Debtors and the Estates, and each of their successors and assigns, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Reorganized Debtors, the Estates, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Superior Court Litigation and Chancery Court Litigation), the Restructuring Support Agreement, the Definitive Documents, the Plan Documents, DIP Facility, DIP Credit Agreement, Exit Term Loan Facility, First Lien Credit Agreement, Note Purchase Agreement, Second Lien Credit Agreement, Intercreditor Agreements, Management Services Agreements, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the DIP Documents, Exit Facility Documents, the Backstop Commitment Letter, the Restructuring Support Agreement, the Definitive Documents, the Plan Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Equity Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(a) (i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted fraud (provided that fraud shall not exempt from the scope of these Debtor releases any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances) or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, any Definitive Document, any Plan Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; and (iii) for the avoidance of doubt, shall not release

or be construed as releasing any party listed on the Schedule of Excluded Parties from any claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including without limitation claims and causes of action arising from an act or omission that is judicially determined by a Final Order to have constituted fraud or willful misconduct or asserted or assertable in the Superior Court Litigation and Chancery Court Litigation.

(b)      Releases by Holders of Claims and Interests.

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, except as otherwise provided in the Plan or in the Confirmation Order, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each Releasing Party, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released, and discharged the Debtors, the Reorganized Debtors, and the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims or Causes of Action asserted or that may be asserted on behalf of the Debtors or their Estates, that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, including any Claims or Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors (which includes, for the avoidance of doubt, all claims and Causes of Action asserted or assertable in the Superior Court Litigation and Chancery Court Litigation), the Restructuring Support Agreement, the Definitive Documents, the Plan Documents, DIP Facility, DIP Credit Agreement, Exit Term Loan Facility, First Lien Credit Agreement, Note Purchase Agreement, Second Lien Credit Agreement, the Intercreditor Agreements, Management Services Agreements,, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the DIP Documents, Exit Facility Documents, the Backstop Commitment Letter, the Restructuring Support Agreement, the Definitive Documents, the Plan Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Equity Interests), or the distribution of property under the Plan, or any other agreement, act or omission, transaction, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in this Section 10.6(b)(i) shall only be applicable to the maximum extent permitted by law; (ii) shall not be construed as (a) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted fraud (other than any Claims or Causes of Action that constitute fraud (as judicially determined by a Final Order) that are based on facts, allegations, or circumstances asserted or assertable in the Superior Court Litigation and Chancery Court Litigation) or (b) releasing any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, any Plan Document, or any document, instrument, or agreement (including those set forth

in the Plan Supplement) executed to implement the Plan; and (iii) for the avoidance of doubt, shall not release or be construed as releasing any party listed on the Schedule of Excluded Parties from any Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including without limitation claims and causes of action arising from an act or omission that is judicially determined by a Final Order to have constituted fraud or willful misconduct or asserted or assertable in the Superior Court Litigation and Chancery Court Litigation.

10.7.   *Exculpation*.

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out, in whole or in part, from the Petition Date through the Effective Date, of the Chapter 11 Cases, the Debtors, the governance, management, transactions, ownership, or operation of the Debtors, the purchase, sale or rescission of any security of the Debtors or the Reorganized Debtors, the DIP Facility, the Restructuring Support Agreement, the Definitive Documents, DIP Credit Agreement, Exit Term Loan Facility, First Lien Credit Agreement, Note Purchase Agreement, Second Lien Credit Agreement, Intercreditor Agreements, and related agreements, instruments, or other documents, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Plan (including the Plan Supplement), the Disclosure Statement, the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the DIP Documents, Exit Facility Documents, the Backstop Commitment Letter, the Restructuring Support Agreement, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan (including, but not limited to, the New Equity Interests), or the distribution of property under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act or omission that is judicially determined in a Final Order to have constituted actual fraud, but in all respects, such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities.  The Exculpated Parties have, and upon completion of the Plan, shall be deemed to have, participated in good faith and in compliance with all applicable laws with regard to the solicitation and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpations set forth in this Section 10.7 (i) shall only be applicable to the maximum extent permitted by law; and (ii) shall not be construed as (a) exculpating any Exculpated Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud (provided that actual fraud shall not exempt from the scope of these exculpations any Claims or Causes of Action arising under sections 544 or 548 of the Bankruptcy Code or state laws governing fraudulent or otherwise avoidable transfers or conveyances) (b) exculpating any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, any Definitive Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (c) for the avoidance of doubt, exculpating the parties listed on the Schedule of Excluded Parties.

10.8.    ***Retention of Causes of Action/Reservation of Rights***.

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to this Article X, the Reorganized Debtors shall have, retain, reserve and be entitled to assert, and may enforce all rights to commence and pursue, as appropriate, any and all claims or Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the Confirmation Date and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity not released pursuant to the Plan.

10.9.    ***Ipso Facto and Similar Provisions Ineffective.***

Any term of any prepetition policy, prepetition contract, or other prepetition obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent that such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Entity based on any of the following: (a) the insolvency or financial condition of a Debtor; (b) the commencement of the Chapter 11 Cases; (c) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (d) the restructuring.

10.10.    ***Solicitation of Plan***.

As of and subject to the occurrence of the Confirmation Date:  (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the (i) Debtors and (ii) the Consenting Parties, and (iii) each of the Debtors and Consenting Parties' respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

10.11.    ***Corporate and Limited Liability Company Action***.

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) the assumption of the  Employee Arrangements assumed pursuant to Section 8.6(a), subject to Sections 8.6(a)-(c), (b) the selection of the managers, directors, and officers for the Reorganized Debtors, (c) the distribution of the New Equity Interests, (d) the entry into the Exit Facility Documents, (e) the approval of the Restructuring Support Agreement, and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date), in each case in accordance with and subject to the terms hereof.  All matters provided for in the Plan involving the corporate or limited liability company structure of the Debtors or the Reorganized Debtors, and any corporate or limited liability company action required by the Debtors or the Reorganized Debtors in connection with the

Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Collateral holders, directors, managers, or officers of the Debtors or the Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including, but not limited to, (v) the New Corporate Governance Documents, (x) the Exit Credit Agreement, (y) any and all other agreements, documents, securities, and instruments relating to the foregoing.   The authorizations and approvals contemplated by this <u>Section 10.11</u> shall be effective notwithstanding any requirements under non-bankruptcy law.

**ARTICLE XI.      RETENTION OF JURISDICTION**.

> **11.1.    *Retention of Jurisdiction*.**

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Cases for, among other things, the following purposes:

(a)      to hear and determine motions and/or applications for the assumption, assumption and assignment, or rejection of Executory Contracts and Unexpired Leases, including resolution of all Cure Disputes, and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

(b)      to determine any motion, adversary proceeding, proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)      to hear and resolve any disputes arising from or related to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)      to ensure that distributions to holders of Allowed Claims are accomplished as provided for in the Plan and Confirmation Order and to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(e)      to consider the allowance, classification, priority, compromise, estimation, or payment of any Claim or any counterclaim related thereto;

(f)      to enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)      to hear and determine all Professional Fee Claims;

(j)      to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Plan Supplement, or the Confirmation Order or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)      to take any action and issue such orders as may be necessary to construe, interpret, enforce, implement, execute, and consummate the Plan;

(l)      to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)      to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(n)      to hear and determine matters concerning securities laws exemptions under section 1145 of the Bankruptcy Code;

(o)      to hear, adjudicate, decide, or resolve any and all matters related to Article X of the Plan, including, without limitation, the releases, discharge, exculpations, and injunctions issued thereunder;

(p)      to resolve disputes concerning Disputed Claims or the administration thereof;

(q)      to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any claims bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purposes;

(r)      to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(s)      to enter a final decree closing the Chapter 11 Cases;

(t)      to recover all assets of the Debtors and property of the Debtors' Estates, wherever located; and

(u)      to hear and determine any rights, claims, or Causes of Action held by or accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory.

For the avoidance of doubt, on and after the Effective Date, the Bankruptcy Court shall not retain exclusive jurisdiction over any matters arising in connection with the Exit Term Loan Facility or any transactions related thereto except to the extent the Bankruptcy Court would have jurisdiction over such matter pursuant to Sections 11.1(d), (e), or (k) of the Plan.

11.2.      *Courts of Competent Jurisdiction*.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of

jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XII.    MISCELLANEOUS PROVISIONS.

### 12.1.    *Payment of Statutory Fees*.

On the Effective Date and thereafter as may be required, the Reorganized Debtors shall pay all fees incurred pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with interest, if any, pursuant to § 3717 of title 31 of the United States Code for each Debtor's case, or until such time as a final decree is entered closing a particular Debtor's case, a Final Order converting such Debtor's case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's case is entered.

### 12.2.    *Substantial Consummation of the Plan*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.3.    *Request for Expedited Determination of Taxes*.

The Debtors shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date, and in the case of any Debtor that is to be dissolved in accordance with the Restructuring Transactions Exhibit, through the completion of its dissolution.

### 12.4.    *Exemption from Certain Transfer Taxes*.

Pursuant to and to the fullest extent permitted by section 1146 of the Bankruptcy Code, (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation, filing or recording of any Lien, mortgage, deed of trust, or other security interest, (c) the making, assignment, filing or recording of any lease or sublease or the making or delivery of any deed, bill of sale, assignment or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtors pursuant to, in implementation of or as contemplated in the Plan and Restructuring Transactions Exhibit (whether to one or more of the Reorganized Debtors or otherwise), (d) the grant of Collateral under the Exit Facility Documents and (e) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to or taxed under any law imposing any stamp or similar tax, including any document recording tax, conveyance fee, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar governmental assessment.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamps, transfer tax, intangible tax, or other stamp or similar taxes.

WEIL:\99859063\1\63808.0003

12.5.      *Amendments*.

(a)      *Plan Modifications*.  Subject to the consent rights set forth in the Restructuring Support Agreement, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code.  In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims or Interests pursuant to the Plan, subject to the consent rights set forth in the Restructuring Support Agreement, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes of effects of the Plan, and any holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented.

(b)      *Other Amendments*.  Subject to the consent rights set forth in the Restructuring Support Agreement, before the Effective Date, the Debtors may make technical adjustments and modifications to the Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court.

12.6.      *Effectuating Documents and Further Transactions*.

Each of the officers of the Reorganized Debtors is authorized, in accordance with his or her authority under the resolutions of the applicable board of directors or managers, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

12.7.      *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors with the consent of the Requisite Consenting First Lien Lenders and Requisite Consenting Second Lien Lenders; *provided, however*, that the Debtors may revoke or withdraw the Plan without such consent in the exercise of the Debtors' fiduciary duty or as otherwise permitted under the Restructuring Support Agreement.  If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Entity; (ii) prejudice in any manner the rights of such Debtor or any other Entity; or (iii) constitute an admission of any sort by any Debtor, any of the Consenting Creditors, the Administrative Agents, or any other Entity.

12.8.      *Severability of Plan Provisions*.

If, before the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

WEIL:\99859063\1\63808.0003

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms, (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors or the Reorganized Debtors (as the case may be), and (c) nonseverable and mutually dependent.

12.9.    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement, a Definitive Document, or a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

12.10.    *Time*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.11.    *Dates of Actions to Implement the Plan*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is on a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

12.12.    *Immediate Binding Effect*.

Notwithstanding any Bankruptcy Rule providing for a stay of the Confirmation Order or Plan, including Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Plan Supplement shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests, the Released Parties, and each of their respective successors and assigns, including, without limitation, the Reorganized Debtors, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors. All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim, Interest, or debt has voted on the Plan.

12.13.    *Deemed Acts.*

Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under the Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party, by virtue of the Plan and the Confirmation Order.

WEIL:\99859063\1\63808.0003

12.14.    ***Successor and Assigns***.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or permitted assign, if any, of each Entity.

12.15.    ***Entire Agreement***.

On the Effective Date, the Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

12.16.    ***Exhibits to Plan.***

All exhibits, schedules, supplements, and appendices to the Plan (including the Plan Supplement) are incorporated into and are a part of the Plan as if set forth in full herein.

12.17.    ***Notices***.

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by electronic transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or addressed as follows:

(a)    if to the Debtors or the Reorganized Debtors:

Mobileum Inc.
20813 Stevens Creek Boulevard, Suite 200
Cupertino, CA 95014
Mike Salfity (mike.salfity@mobileum.com)

with a copy (which will not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Jeffrey D. Saferstein, Esq. (Jeffrey.Saferstein@weil.com)
Alexander W. Welch, Esq. (Alexander.Welch@weil.com)
Daphne Papadatos, Esq. (Daphne.Papadatos@weil.com)
Eric L. Einhorn, Esq. (Eric.Einhorn@weil.com)

and

700 Louisiana Street, Suite 3700
Houston, Texas 77002
Gabriel A. Morgan, Esq. (Gabriel.Morgan@weil.com)
Clifford Carlson, Esq. (Clifford.Carlson@weil.com)

(b)      if to the Consenting First Lien Lenders, to:

      Milbank LLP
      55 Hudson Yards
      New York, NY 10001
      Evan Fleck, Esq. (efleck@milbank.com)
      Matthew Brod, Esq. (mbrod@milbank.com)
      Abigail Debold, Esq. (adebold@milbank.com)
      Rupsha Basu, Esq. (rbasu@milbank.com)

(c)      if to the Consenting Second Lien Lenders, to:

      Akin Gump Strauss Hauer & Feld LLP
      2001 K Street N.W.
      Washington, DC 20006
      Scott L. Alberino, Esq. (salberino@akingump.com)
      Blaine Scott, Esq. (bscott@akingump.com)

(d)      if to the Consenting Sponsor to:

      Simpson Thacher & Bartlett LLP
      425 Lexington Avenue
      New York, NY 10007
      Sunny Singh, Esq. (Sunny.Singh@stblaw.com)
      Dov Gottlieb, Esq. (Dov.Gottlieb@stblaw.com)

After the Effective Date, the Debtors have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, they must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

WEIL:\99859063\1\63808.0003

Dated:  July 23, 2024
        New York, New York

                                    Respectfully submitted,


                                    By:     /s/ Ripu Singh                        


                                    Name:  Ripu Singh
                                    Title:   Chief Operating Officer and Chief Financial
                                             Officer


                                    On behalf of Mobileum, Inc. and each of its Debtor
                                    affiliates